No.   92-382

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

ANNA RUTH SCOFFIELD,

     Petitioner and Respondent,

  and

LINDSEY DENNIS SCOFFIELD,

     Respondent and Appellant.

FILED

MAY 18 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

       Vincent J. Kozakiewicz, Attorney at Law,
Dillon, Montana

    For Respondent:

       John Warren, Schulz, Davis & Warren,
Dillon, Montana


             Submitted on Briefs:  November 19, 1992

                    Decided: May 18, 1993

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Lindsey Scoffield appeals from a supplemental decree of dissolution entered in the Fifth Judicial District Court, State of Montana, on March 20, 1992. Lindsey contends that the District Court abused its discretion when it ordered him to assume all marital debts, including debts incurred by his spouse on behalf of her children from a prior marriage. Additionally, Lindsey asserts that the court erred when it denied his request to modify the allocation of proceeds from the sale of the parties' cattle. We affirm.

The issues on appeal are:

1. Did the District Court abuse its discretion when it required appellant to assume all marital debts, including debts incurred by respondent on behalf of her children from a prior marriage?

2. Did the District Court err when it denied appellant's request to modify the allocation of proceeds from the sale of the parties' cattle?

Anna Ruth Scoffield, age 32, and Lindsey Dennis Scoffield, age 31, were married in Abilene, Texas, on March 2, 1985. There were no children born of this marriage, although Anna has two children from a previous marriage.

On March 13, 1991, Anna filed a petition to have the parties' marriage dissolved. A dissolution proceeding was held on May 16, 1991. At the proceeding, Lindsey expressly agreed to assume all

2

marital debts in exchange for the court's denial of maintenance and attorney fees to Anna.

On July 1, 1991, the District Court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution. The court ordered the parties to equally divide their marital property. Additionally, the court ordered Lindsey to assume and pay all existing marital debts, and denied Anna's request for maintenance and attorney fees. Finally, the court directed the parties to sell the cattle they owned and to divide the proceeds equally.

In August 1991, the parties entered into an arrangement concerning the cattle that differed from the July 1, 1991, dissolution decree. Rather than sell the cattle and divide the proceeds equally, as required by the decree, the parties agreed that Lindsey would pay Anna $4600 for her interest in the cattle. Lindsey paid Anna $3000 in cash, and delivered a $1600 promissory note, due on April 1, 1992. On January 10, 1992, Lindsey sold the cattle to a third party; however, he did not recover the amount per head that he anticipated.

During the year following the July 1, 1991, decree, Lindsey refused to pay the majority of the parties' existing marital debts. Anna responded by moving that the District Court find Lindsey in contempt. On March 6, 1992, the court held a hearing on the contempt motion. During the hearing, Lindsey made two arguments to the District Court concerning the marital property division.

3

First, Lindsey acknowledged that he agreed to assume the marital debts; however, he asserted that he should not have to pay the debts incurred by Anna on behalf of her children from her previous marriage because they were not marital debts.

Second, Lindsey requested the court to modify the allocation of the cattle proceeds in light of the actual sale price of the cattle. He reminded the court that the dissolution decree required an equal division of cattle proceeds; and he explained to the court that as a result of a contract concerning the cattle that he made with Anna subsequent to the decree, he received less than 50 percent of the cattle proceeds.

On March 20, 1992, the District Court amended and supplemented the July 1, 1991, dissolution decree. In the supplemental decree, the court entered a judgment against Lindsey for $1019.16, which represented the amount of marital debts. The court specifically listed the accounts Lindsey was obligated to assume and limited those accounts to debts incurred as of May 16, 1991, the date of the parties' dissolution proceeding. These accounts included debts incurred by Anna on behalf of her children from a prior marriage. The court stayed the execution of the judgment upon the condition that Lindsey pay to Anna monthly installments until the judgment of $1019.16 is paid in full.

In the March 20, 1992, order, the court also denied Lindsey's request to modify the allocation of proceeds from the sale of the cattle. The court concluded that the parties were bound by their

4

own agreement regarding the value of the cattle. Lindsey appeals from the March 20, 1992, order.

On appeal, Lindsey contends that (1) the court abused its discretion when it required Lindsey to assume responsibility for debts incurred by Anna on behalf of her children from a prior marriage; and (2) the court erred when it refused to modify the allocation of proceeds, in light of the actual sales price of the cattle.

I

Did the District Court abuse its discretion when it required appellant to assume all marital debts, including debts incurred by respondent on behalf of her children from a prior marriage?

Lindsey acknowledges on appeal that he expressly agreed to assume all marital debts; however, he contends that the District Court abused its discretion when it required him to assume the debts incurred by Anna on behalf of her children from a prior marriage. Lindsey asserts that debts incurred on behalf of a spouse's children from a previous marriage are not marital debts.

Because Lindsey expressly agreed to assume "all of the marital debts" in exchange for the court's denial of maintenance and attorney fees to Anna, our analysis need not focus on whether Lindsey is statutorily and/or legally obligated to assume the debts incurred by his spouse on behalf of her children from a prior marriage. Nor is it necessary to ascertain for whose benefit those debts were incurred. For purposes of this appeal, we limit our

5

analysis to whether the debts at issue are "marital debts." If they are, then Lindsey is obligated by his own agreement to pay for them.

The Montana Marriage and Divorce Act, §§ 40-1-101 to 40-4-225, MCA, neither defines nor refers to the term "marital debt." Moreover, few Montana cases, if any, specifically define "marital debt." Yet a definition of "marital debt" is essential in a dissolution proceeding because in order for trial courts to "equitably apportion between the parties the property and assets," as courts are statutorily required to do by § 40-4-202, MCA, courts must first ascertain the parties' assets and liabilities prior to apportionment. *In re Marriage of Dirnberger* (1989), 237 Mont 398, 401, 773 P.2d 330, 332. Courts must know the definitional parameters of the term "marital debt" so that courts can make fair marital property divisions. Only by knowing what to include as "marital debt," before balancing a parties' assets and liabilities, can a court make a fair marital property apportionment.

Montana is not alone in its lack of a definition for "marital debt." Other states have acknowledged that the term "marital debt" is not defined in their state code or in court opinions, although the word appears regularly in dissolution documents. The Missouri Court of Appeals explains in the case *In re Marriage of Welch* (Mo. App. 1990), 795 S.W.2d 640, 642:

> In the debt oriented society now prevailing, the term "marital debts" is found in nearly every dissolution case filed. The term is found in the pleadings, separation

6

agreements, court orders and judgments, and in the appellate court decisions. Yet, the term "marital debt" never appears in the "Dissolution of Marriage Act," § 452.300, et seq., and certainly is never defined.

Although the Missouri Revised Statutes do not define the term "marital debt," they do define its converse, "marital property." In *Welch*, the Missouri Court of Appeals relied on the statutory definition of "marital property" as a helpful starting point for defining "marital debt." According to the Court of Appeals, "'[m]arital property' is 'all property acquired by *either spouse subsequent to the marriage* . . . .'" *Welch*, 795 S.W.2d at 643 (interpreting Missouri Revised Statutes, § 452.330.2). The Court of Appeals held that "it follows, therefore, that 'marital debt' is ordinarily 'debt incurred subsequent to the marriage.'" *Welch*, 795 S.W.2d at 643.

Although Montana's statutory definition of marital property is broader than Missouri's, it also includes property acquired by either party during the marriage. See § 40-4-202, MCA. Since the definition for marital property in Montana includes all property acquired by either party during the marriage, it follows, therefore, that "marital debt" may be defined as all debt incurred by either party during the marriage.

The disputed debts in this case were medical debts incurred on behalf of Anna's children. They were incurred while Lindsey and Anna were married. Specifically, they were incurred during 1990 and in the spring of 1991, which was subsequent to the date of Anna

7

and Lindsey's marriage on March 2, 1985, and prior to May 16, 1991, the date of the parties' marriage dissolution. Pursuant to our definition that marital debt is all debt incurred by either party during the marriage, we conclude that the medical debts incurred by Anna on behalf of her children during the course of the parties' marriage are marital debts.

Because Lindsey expressly agreed to assume all marital debts, and the court accepted Lindsey's promise in exchange for the denial of maintenance and attorney fees to Anna, Lindsey is obligated to pay for all marital debts, including the debts incurred by Anna on behalf of her children from a prior marriage.

When reviewing a division of marital property case, the standard of review employed by this Court is whether the lower court abused its discretion when it fashioned the marital property distribution. *In re Marriage of Danelson* (1992), 253 Mont. 310, 317, 833 P.2d 215, 220. The lower court is obligated to seek a fair marital property division using reasonable judgment and common sense. *Danelson*, 833 P.2d at 220. When a District Court judgment is based upon substantial credible evidence, this Court will not alter that judgment unless there is a clear abuse of discretion. *Dirnberger* (1989), 773 P.2d at 332.

We conclude that the lower court exercised reasonable judgment when it balanced the economic consequences of Lindsey's assumption of all marital debts against the economic burden of maintenance and

attorney fees. Therefore, we conclude that the court did not abuse its discretion when it ordered Lindsey to assume all marital debts.

II

Did the District Court err when it denied appellant's request to modify the allocation of proceeds from the sale of the parties' cattle?

Lindsey asserts that as a result of the actual sales price of the cattle, he received less than 50 percent of the cattle proceeds; and that this result was in contravention of the court's order to equally divide the proceeds. On appeal, Lindsey contends that the District Court erred when it denied his request to modify the allocation of cattle proceeds. Contrary to Lindsey's assertion, we find no abuse of court discretion.

Lindsey relies on *In re Marriage of Berthiaume* (1977), 173 Mont. 421, 567 P.2d 1388. In *Berthiaume*, we held that a trial court abuses its discretion when it makes a finding that property should be divided equally and then subsequently makes a disparate award. However, unlike the situation in *Berthiaume*, where the court acted in contravention of its findings, the District Court in the present case did not act contrary to its finding that the parties should divide the cattle proceeds equally. The court ordered the parties to sell the cattle and equally divide the proceeds. It was Lindsey and Anna who devised their own means for accomplishing their obligation to sell and equally divide the cattle proceeds.

9

Parties are free to contract with one another, and Lindsey and Anna entered into a valid contract regarding the cattle. When Lindsey requested the lower court to modify the allocation of cattle proceeds in light of the actual sales price of the cattle, he was, in effect, asking the court to invalidate the parties' contract. This Court has held that a party to an agreement which has been performed for some length of time is estopped to deny its validity. *In re Marriage of Jensen* (1986), 223 Mont. 434, 727 P.2d 512. Therefore, we conclude that the lower court did not err when it bound the parties to their own agreement and refused to modify the allocation of proceeds.

Lindsey and Anna satisfied their obligation under the decree to sell the cattle and equally divide the proceeds when they agreed to have Lindsey buy out Anna's interest before selling the cattle to a third party. The fact that Lindsey paid Anna for more than 50 percent of the actual value of the cattle was a result of his own agreement with his wife, not the court's decree. Therefore, we conclude that the District Court did not abuse its discretion when it refused to amend the allocation of cattle proceeds. We affirm the District Court decision.

_____
Justice

10

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11