FILED

January 12 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0353

DA 15-0353

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 7

IN RE THE MARRIAGE OF:

SHERRI ELAINE ROSE,

       Petitioner and Appellant,

  v.

MICHAEL THOMAS ROSE,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                  In and For the County of Yellowstone, Cause No. DR 13-0342
                  Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kevin T. Sweeney, Attorney at Law, Billings, Montana

      For Appellee:

          J. Reuss, Guthals, Hunnes, & Reuss, P.C., Billings, Montana

Submitted on Briefs:  December 9, 2015
           Decided:  January 12, 2016

Filed:

                           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Sherri Elaine Rose appeals the findings of fact, conclusions of law, and decree of dissolution of the Thirteenth Judicial District Court, Yellowstone County, dissolving her marriage to Michael Thomas Rose. We restate the issue on appeal as follows:

*Whether the District Court erred in allocating delinquent tax liability equally between the parties after taxing authorities had determined that Sherri was an "innocent spouse" for purposes of joint tax liability.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Sherri and Michael married in 1994 and have three children. They resided together in Billings, Montana, for the majority of their marriage before separating in late 2012. Sherri filed a petition for dissolution in March 2013 and, on April 24, 2014, the District Court held a bench trial.

¶4 During their marriage, Michael worked in medical equipment sales and Sherri was primarily a homemaker. Following their separation, Michael moved to Florida to take a job as a surgical supplies sales representative trainer. Sherri returned to work as a cosmetologist, a profession she had held prior to the marriage.

¶5 In 2005, Sherri and Michael bought a house at 2407 Teton Avenue, Billings. Sherri and Michael bought the Teton property as an investment; they planned to improve the house and "flip" it. Over the course of several years, they invested approximately one hundred thousand dollars into improving the Teton property. They were unable to sell it due to the downturn in the housing market following the 2008 financial crisis. Sherri and Michael also owned a recreational cabin in Red Lodge.

2

¶6 In 2006, Sherri and Michael began to accrue both federal and state income tax liability. By 2012, they had accumulated over $70,000 in delinquent tax liability to the Internal Revenue Service (IRS) and $20,000 in delinquent tax liability to the Montana Department of Revenue (Department). As a consequence, state and federal taxing authorities placed tax liens on both of the Roses' real properties.

¶7 At the dissolution proceeding, Michael testified that their tax liability accrued because he and Sherri decided to apply the income intended to pay their taxes to improving the Teton property. Their plan, he testified, was to pay the tax liability once the Teton property was sold. He further testified that income that should have been put toward the tax liability also was spent on "vacations and what have you." Michael proposed during the dissolution proceeding that the tax liability be considered marital debt and that both the Teton property and the Red Lodge property be sold to pay off the tax liability.

¶8 Sherri testified that she was aware that the tax liability was incurred during the marriage and acknowledged that she and the family benefitted from the income that created the tax liability. Prior to the dissolution proceeding, however, she sought and obtained a determination from both the IRS and the Department that she was an "innocent spouse." The IRS and the Department therefore concluded that Sherri was not liable to the agencies for any of the delinquent tax liability. As a result of the innocent spouse relief, Sherri testified that she received refunds from the IRS and the Department totaling nearly $11,000. Sherri proposed during the dissolution proceeding that the tax

3

liability not be considered marital debt due to her status as an "innocent spouse" and that she be awarded the Teton property.

¶9 At the conclusion of the proceeding, the District Court orally pronounced that it intended to order that both the Teton property and the Red Lodge property be sold, in part, to pay the tax liability:

> It's my conclusion that the only reason the tax liability occurred is because [Sherri and Michael] put the money into either living expenses or into the Teton Avenue home and it's—even though it's—the IRS decided that they weren't going to go after Ms. Rose, I think it is a marital debt and should be paid for out of the proceeds.

In its written findings of fact, conclusions of law, and decree of dissolution, the court ordered that the Teton and Red Lodge properties be sold and that the proceeds be put towards paying off the tax liability. The court found, "Although the IRS has decided that were [sic] weren't going to pursue the tax liability against Sherri, the Court finds that the tax liabilities are joint marital obligations because the parties put the money into living expenses or the Teton Avenue home." Sherri appeals the court's finding and conclusion regarding the tax liability.

**STANDARD OF REVIEW**

¶10 We review a district court's findings of fact pertaining to marital property division to determine if they are clearly erroneous. *In re Marriage of Crowley*, 2014 MT 42, ¶ 24, 374 Mont. 48, 318 P.3d 1031. A finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made. *Crowley*, ¶ 24. We review a district court's conclusions of law to determine if they are correct. *In re*

4

*Marriage of Bartsch*, 2007 MT 136, ¶ 9, 337 Mont. 386, 162 P.3d 72 (hereafter *Bartsch II*). Absent clearly erroneous findings, we will affirm a district court's property division unless we identify an abuse of discretion. *Bartsch II*, ¶ 9.

## DISCUSSION

¶11  *Whether the District Court erred in allocating delinquent tax liability equally between the parties after taxing authorities had determined that Sherri was an "innocent spouse" for purposes of joint tax liability.*

¶12  On appeal, Sherri contends that because the District Court did not adequately consider the IRS's and the Department's innocent spouse determinations, it erred in apportioning the delinquent tax liability equally between the parties. She asserts that the District Court "wholly misunderstood or misapplied" the administrative rulings that she was an "innocent spouse" and not responsible for the tax liability. She argues that in order to obtain innocent spouse status, she had to prove that she did not know and had no reason to know of the non-payment and that it would be inequitable to hold her liable for the debt. Sherri maintains that, because she could not have been found to be an "innocent spouse" unless she did not receive a material benefit from the understatement of tax, the District Court improperly disregarded the taxing authorities' rulings in reaching a contrary finding.

¶13  In response, Michael argues that the administrative rulings have no preclusive effect in the dissolution proceeding and that the District Court did not err in concluding that the tax liability should be treated as marital debt based on substantial evidence that the parties put the money into joint living expenses or into the Teton property.

5

¶14 Sherri's reply, on one hand, appears to acknowledge that the administrative determinations do not have preclusive effect. On the other hand, she maintains that she could not have been granted innocent spouse status unless she did not materially benefit from the untaxed income. Michael, she points out, did not appeal from the administrative determinations. For the District Court to reach a contrary conclusion, it would have to point to specific evidence in the record and explain why equity required a result different from that reached by the taxing authorities. In this regard, Sherri argues that the District Court's findings of fact are inadequate "in determining what evidence the court used to order relief ignoring both taxing authorities."

¶15 Innocent spouse relief from joint tax liability is an administrative remedy provided for by both Montana and federal statute. Under Montana statute, "A taxpayer who has obtained relief from joint and several liability under section 6015 of the Internal Revenue Code, 26 U.S.C. 6015, may apply to the department for relief from joint and several liability of the tax imposed by this chapter." Section 15-30-2646(1), MCA. Under federal statute, "an individual who has made a joint return may elect to seek relief" from joint tax liability if she meets certain requirements. 26 U.S.C. § 6015(a)(1). The relevant requirements for such relief include:

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such an understatement;

6

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement . . .

26 U.S.C. § 6015(b)(1). In determining whether it is inequitable to hold a spouse requesting innocent spouse relief liable for an understatement of tax, "[o]ne relevant factor . . . is whether the requesting spouse significantly benefited, directly or indirectly, from the understatement. A significant benefit is any benefit in excess of normal support." 26 C.F.R. § 1.6015-2(d). The record before the District Court does not substantiate any factual determinations made either by the IRS or by the Department in awarding Sherri innocent spouse relief.

¶16 To address Sherri's arguments fully, we first clarify that the doctrines of claim and issue preclusion do not apply here to foreclose the District Court's determination that the tax liability is a marital debt. First, we have held that claim and issue preclusion may apply to an administrative decision that has been "upheld on judicial review." *Rooney v. City of Cut Bank*, 2012 MT 149, ¶ 17, 365 Mont. 375, 286 P.3d 241 (citing *Parini v. Missoula Cnty. High Sch. Dist.*, 284 Mont. 14, 23, 944 P.2d 199, 204 (1997)). *See also Dobson v. Dobson*, 159 S.W.3d 335, 337 (Ky. Ct. App. 2004) (concluding that the "IRS's determination for innocent spouse relief is not entitled to preemption or res judicata because it involves only an administrative process rather than an adjudication"). The IRS's and the Department's administrative decisions that Sherri is an "innocent spouse" were not subjected to judicial review.

¶17 In addition, the administrative proceedings do not satisfy all elements that must be met in order to bar re-litigation of an issue. Among those elements is that the issues

7

decided in the prior adjudication must be identical to the issues raised in the current litigation. *Rooney*, ¶ 17; *Planned Parenthood v. State*, 2015 MT 31, ¶ 13, 378 Mont. 151, 342 P.3d 684 (concluding that "[t]he identity of issues is the most important element of issue preclusion"). An innocent spouse determination involves considerations different from a district court's division of a marital estate. Under an innocent spouse determination, "[t]he IRS's only concern is the identity of the spouse to whom it will look for payment of the delinquent taxes . . . ." *In re Marriage of Hargrave*, 36 Cal. App. 4th 1313, 1320 (Cal. App. 2d Dist. 1995) (citations omitted). In other words, the IRS is concerned only with which party will be responsible for payment to the government of the delinquent taxes.

¶18 In contrast, a district court's concern in a dissolution proceeding is the equitable apportionment of the marital estate. Section 40-4-202(1), MCA (stating in pertinent part that the court must "equitably apportion between the parties the property and assets . . ."). In equitably apportioning the marital estate, the court generally must determine the marital estate's net worth. *In re Marriage of Lewton*, 2012 MT 114, ¶ 15, 365 Mont. 152, 281 P.3d 181. This determination necessarily requires the court to consider marital debt. *Crowley*, ¶ 31 (citing *In re Marriage of Rudolf*, 2007 MT 178, ¶ 23, 338 Mont. 226, 164 P.3d 907 (concluding that by not considering the parties' debt, "the true net worth of the marital estate was not accurately determined" and therefore the issue of equitable apportionment could not be resolved)). We have defined "marital debt" as "all debt incurred by either party during the marriage." *In re Marriage of Scoffield*, 258 Mont.

8

337, 342, 852 P.2d 664, 667 (1993). We have not examined previously how an innocent spouse determination may affect the equitable apportionment of marital debt.

¶19 Section 40-4-202(1), MCA, requires the court to "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title to the property and assets is in the name of the husband or wife or both." The statute therefore requires the court to apportion marital property equitably "regardless of how or when it was acquired." *In re Marriage of Funk*, 2012 MT 14, ¶ 13, 363 Mont. 352, 270 P.3d 39. Because the court must consider marital debt in dividing the marital estate under § 40-4-202(1), MCA, it follows that the court also apportions marital debt equitably, and may do so regardless of which party is responsible for it. *Crowley*, ¶¶ 28, 34; *Scoffield*, 258 Mont. at 342, 852 P.2d at 667 (concluding that "the medical debts incurred by [Wife] on behalf of her children during the course of the parties' marriage are marital debts").

¶20 Accordingly, we conclude that so long as the delinquent tax debt was incurred during the marriage, an innocent spouse determination by the IRS or the Department does not preclude a district court from equitably apportioning the delinquent tax debt to an "innocent spouse" under § 40-4-202(1), MCA. Other jurisdictions agree with this conclusion. *Dobson*, 159 S.W.3d at 337 (concluding that the trial court did not abuse its discretion in apportioning delinquent tax liability to an "innocent spouse" in part because the "[innocent spouse] did not present evidence that the money the family had as a result of the underpayment of taxes was not spent on family expenses"); *In re Marriage of Hargrave*, 36 Cal. App. 4th at 1320-21 (upholding the trial court's apportionment of

9

delinquent tax liability and concluding that an innocent spouse determination does not preempt state law efforts to impose liability for federal income taxes in a dissolution proceeding).

¶21 Contrary to Sherri's assertions, the District Court did not find that Sherri "substantially benefitted" from the understatement; that is, the court did not find that Sherri received "any benefit in excess of normal support." 26 C.F.R. § 1.6015-2(d). The court simply found that "the tax liabilities are joint marital obligations because the parties put the money into living expenses or the Teton Avenue home." The court "recognize[d], and attempt[ed] to compensate for," the fact that, as Sherri testified, the income that created the tax liability contributed to the marriage. *Bartsch II*, ¶ 20. As such, this finding is in line with the court's "broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances." *Bartsch II*, ¶ 9 (citations omitted). The District Court therefore did not abuse its discretion in apportioning the delinquent tax liability equally between the parties.

¶22 We are not persuaded by Sherri's contention that the District Court's departure from the taxing authorities' findings was not explained sufficiently to withstand review for clear error. Because "[f]indings of fact inform the court of appeals of the basis of the judgment," they must be "sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and the evidence presented must support them." *Bartsch II*, ¶ 33 (citation omitted). Therefore, in order for a district court's findings to be adequate, they "must be complete at least to the point that this Court need not succumb to

10

speculation when assessing the conscientiousness or reasonableness of the district court's judgment." *Bartsch II*, ¶ 33 (citation omitted).

¶23　　Here, the District Court was presented with very little evidence regarding Sherri's status as an "innocent spouse." Sherri presented no documentation from the IRS or the Department pertaining to the innocent spouse determination.[1] Sherri did not cite the trial court to the statutes and regulations that she has identified in her briefing to this Court. Furthermore, Sherri's own proposed findings of fact and conclusions of law do not address the innocent spouse determination. Although Sherri did testify at the dissolution proceeding that both the IRS and the Department had determined her to be an "innocent spouse," there was very little testimony regarding what that determination entails. During his cross-examination of Michael, Sherri's counsel stated that there "are legal definitions" regarding an innocent spouse determination. Counsel then stated:

> In order for the taxman to call someone an innocent spouse and use that special and very limited exception. There's very specific rules. I know you may not know them. The Court may well know them, and they're certainly in the law, and I recognize you may not know the tax law, but I didn't know whether or not you knew that, but I take it from your answer that you did not, correct?

The extent of counsel's discussion of these "very specific rules" during the proceeding was to state that "at least by my understanding of these rules, is that she didn't know of any of [the tax liability] and that she didn't benefit from any of [the income that created

---

[1] In her reply brief on appeal, Sherri requests that we take judicial notice of documentation from the IRS and the Department regarding her innocent spouse relief, which she has appended to her reply brief. "We generally do not take judicial notice of evidence not presented to the district court." *Cruson v. Missoula Elec. Coop., Inc.*, 2015 MT 309, ¶ 30, 381 Mont. 304, 359 P.3d 98. This rule is particularly apropos here, where we are reviewing whether the District Court's findings of fact are adequate in light of the record before it.

the tax liability]." On cross-examination, however, Sherri testified that she was aware that the couple incurred income tax debt during the marriage and that "I did benefit [from the income that created that debt], but I won [innocent spouse relief]."

¶24 Based on this limited evidence, the District Court found that even though the IRS was not going to pursue the tax liability against Sherri, "the tax liabilities are joint marital obligations because the parties put the money into living expenses or the Teton Avenue home." The court's finding is "sufficiently comprehensive and pertinent to the issues to provide a basis for decision" in light of the limited evidence presented by Sherri regarding her innocent spouse relief. *Bartsch II*, ¶ 33. Moreover, Sherri's own testimony supports the court's finding that the delinquent tax liability was a joint marital obligation. Although the court's finding is brief, it does not require us to engage in speculation in "assessing the conscientiousness or reasonableness of the district court's judgment" because it provides a "basis upon which to review whether" the District Court equitably apportioned the marital estate, as required by § 40-4-202(1), MCA. *Bartsch II*, ¶¶ 33-34.

¶25 There is substantial evidence in the record to support the District Court's finding that Michael's income that created the tax liability was used for marital purposes. The court considered Sherri's status as an "innocent spouse" and was within its discretion to conclude that this determination did not affect equitable apportionment of the delinquent tax liability. We decline to reverse the District Court's findings as inadequate.

## CONCLUSION

¶26 The District Court was not bound by the taxing authorities' determinations that they would not collect delinquent taxes from Sherri. The court did not err in considering

12

the tax liability as marital debt or by including that debt in apportioning the marital estate.

Its judgment is affirmed.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE