*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARCIE GLOWACKI,

       Plaintiff-Appellant,

v

MARTIN GLOWACKI,

       Defendant-Appellee.

UNPUBLISHED
June 10, 2021

No. 350691
Oakland Circuit Court
LC No. 2017-856477-DO

Before: K. F. KELLY, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

In this divorce action, plaintiff appeals as of right, challenging the trial court's decisions to hold her 50% responsible for repayment of the parties' tax debt, to award her no share of defendant's medical practice, and to include language in the divorce judgment providing that spousal support would be forever barred after four years. Plaintiff also argues that the trial court was biased against her. For the reasons set forth in this opinion, we affirm in part, vacate in part, and remand for further proceedings. We deny plaintiff's request to order that this case be reassigned to another trial judge on remand.

## I. BACKGROUND

The parties married in April 2004. Although the parties did not have any children of the marriage, plaintiff had two sons from a previous marriage. Defendant was in medical school when the parties met. Before and during the early years of the parties' marriage, plaintiff worked in the aviation industry, selling seats on private planes for both her own business and another company. In 2007, after defendant had obtained his medical degree, he established a medical practice known as the Sunrise Institute of Pain Management ("Sunrise"). Plaintiff contributed funds to assist in establishing this practice and she was involved in managing the practice until approximately 2011 or 2012, when she decided to remain at home to care for her two sons and the marital home.

Despite the fact that Sunrise generated revenues in excess of $1.5 million annually, the parties fell behind in their tax obligations to the state of Michigan and the United States government. At the time of trial in 2018, the parties owed approximately $2.7 million in outstanding taxes to the state of Michigan and the Internal Revenue Service (IRS). Although the

-1-

IRS initially granted plaintiff innocent-spouse relief with regard to a portion of the tax liability, it later denied plaintiff innocent-spouse relief with respect to tax years 2011-2014 and 2016.

At trial, the parties attributed the tax debt to lavish spending, with each party blaming the other for the spending and financial decisions. Similarly, both parties took credit for the launch of defendant's medical practice. At the time of trial, defendant's income from his medical practice was approximately $1 million annually. Meanwhile, plaintiff claimed that she had to sell personal belongings and jewelry, and accept money from her children, to make ends meet after filing for divorce.

The primary issues at the bench trial involved the division of the marital estate, including apportionment of the tax liabilities, and determination of spousal support for plaintiff. The trial court awarded the parties' marital home in Michigan to defendant, and awarded the parties' vacation home in Colorado to plaintiff. The trial court found that both parties were responsible for the excessive spending that led to the tax liabilities, and held both parties equally responsible for repayment of the tax debt.

With respect to defendant's medical practice, a certified valuation analyst testified at trial that the practice had a property value of $184,000, using an asset approach. During the bench trial, plaintiff's counsel explained that he was exploring the value of the medical practice for its relevance in determining an appropriate award of spousal support. At the conclusion of the bench trial, the trial court inquired whether the parties' homes in Michigan and Colorado were the only assets in the marital estate subject to division, and both counsel for defendant and plaintiff agreed. Counsel for plaintiff did not assert that the medical practice itself was an asset to be distributed as part of the marital estate. Similarly, in plaintiff's proposed findings of fact and conclusions of law with regard to spousal support, plaintiff focused on the annual revenue from Sunrise, as well as defendant's annual income, to support her request for spousal support. Plaintiff also requested that defendant pay the mortgages on both the Michigan and Colorado properties. Plaintiff did not request that defendant's medical practice be divided and a share or monetary payment be made to plaintiff.

Moreover, in a motion for entry of judgment and approval of attorney fees, plaintiff's counsel included a proposed judgment of divorce, and the proposed property-settlement portion of that judgment provided that Sunrise would be allocated to defendant, "free and clear of any interest of plaintiff." Likewise, in plaintiff's response to defendant's motion for entry of judgment, plaintiff's counsel included a proposed judgment that contained the identical language awarding Sunrise to defendant as part of the division of the marital estate. At the hearing on the parties' respective motions for entry of the judgment, plaintiff did not raise the issue of the division of defendant's medical practice, and the issue was not otherwise addressed. Based on the above, the trial court did not award any portion of the value of defendant's medical practice to plaintiff.

In determining spousal support, the trial court found that defendant's income was $1 million annually. The trial court also found that plaintiff was capable of working and imputed income of $30,000 per year to her. The trial court awarded plaintiff spousal support for four years, in the amount of $30,000 per month for the first year, and $20,000 per month for the subsequent three years. The trial court also held that defendant would be permitted to deduct from these monthly amounts certain expenses and debts for which plaintiff was held responsible. Specifically,

for the first year, the trial court required defendant to pay plaintiff $30,000 per month, but also permitted defendant to deduct from that amount: (1) plaintiff's car payment; (2) plaintiff's 50% share of the monthly payments to the IRS and the state of Michigan; (3) plaintiff's 50% share of a receiver fees; (4) the monthly mortgage payment and a monthly line-of-credit payment on the Colorado home; and (5) plaintiff's liability for attorney fees of $43,890, with $5,296.25 payable each month for the first six months, and with the balance payable in months seven and eight. The trial court reduced spousal support during the subsequent three years to $20,000 per month, and permitted defendant to deduct from that amount plaintiff's 50% share of the monthly payments to the IRS and the state of Michigan for the outstanding tax debt. In the uniform spousal support order (USSO), the trial court ordered, over plaintiff's objection, that spousal support would be "forever barred" after 48 months.

After the bench trial, the trial court entered a judgment of divorce, and this appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

"We review the trial court's factual findings on the division of marital property for clear error." *Skaates v Kayser*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346487); slip op at 10. A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*. If the trial court's findings of fact are upheld, this Court must then decide whether the trial court's dispositive ruling was fair and equitable in light of those facts. *Id*. Given that the trial court's dispositional ruling is an exercise of discretion, the ruling should be affirmed unless this Court is left with the firm conviction that the division was inequitable. *Id*.

As this Court explained in *Cassidy v Cassidy*, 318 Mich App 463, 477; 899 NW2d 65 (2017), the trial court's ultimate goal in the division of the parties' marital estate is to ensure that equity is achieved. While it is not necessary that marital property be divided equally, "it must be divided equitably in light of a court's evaluation of the parties' contributions, faults, and needs." *Id*.

> We hold that the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Id*., quoting *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992) (citation omitted).]

The trial court "must consider all the relevant factors and not assign disproportionate weight to any one circumstance." *Sparks*, 440 Mich at 158. In dividing the marital estate, the trial

court "is given broad discretion in fashioning its rulings and there can be no strict mathematical formulations. *Id*. at 158-159. With regard to the division of debt in the marital estate, the trial court is to consider the credibility of each witness and determine whether and how each party contributed to the marital debt. See, e.g., *Lesko v Lesko*, 184 Mich App 395, 401; 457 NW2d 695 (1990), abrogated on other grounds in *Booth v Booth*, 194 Mich App 284, 291; 486 NW2d 116 (1992). Where matters of witness credibility are concerned, this Court will give special deference to the trial court's factual findings. *Woodington v Shokoohi*, 288 Mich App 352, 358; 792 NW2d 63 (2010).

"A trial court's award of spousal support is reviewed for an abuse of discretion, but any underlying factual findings are reviewed for clear error, and the award 'must be affirmed unless [this Court is] firmly convinced that it was inequitable.' " *Andrusz v Andrusz*, 320 Mich App 445, 452; 904 NW2d 636 (2017) (cleaned up). Questions of law are reviewed de novo. *Skaates*, ___ Mich App at ___; slip op at 10.

## B. SPOUSAL SUPPORT

On appeal, plaintiff argues that the trial court erred as a matter of law by including language in the USSO that, after 48 months of spousal support, "Plaintiff shall be forever barred from receiving spousal support from Defendant."

Preliminarily, we reject defendant's argument that appellate review of this issue is foreclosed because plaintiff invited any error by acknowledging that the trial court had authority to bar spousal support after 48 months. The record discloses that plaintiff expressly opposed the inclusion of language forever barring spousal support after 48 months, and the statement by plaintiff's counsel was made only after the trial court had already expressed its intention to include that language, over plaintiff's objection. Under these circumstances, plaintiff did not invite the alleged error. See *Cassidy*, 318 Mich App at 476.

Turning to the merits of plaintiff's argument, MCL 552.28 provides:

> On petition of either party, after a judgment for alimony or other allowance for either party or a child . . . and subject to [MCL 552.17], the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance . . . and may make any judgment respecting any of the matters that the court might have made in the original action.

In *Smith v Smith*, 328 Mich App 279, 283; 936 NW2d 716 (2019), this Court recognized that MCL 552.28 "generally authorizes a court to modify an award of spousal support, and it provides a statutory right to litigants to seek modification of spousal support. But, the Court recognized that MCL 552.28 does not preclude litigants from "clearly expressing in a settlement their intent to render a spousal support final, binding, and nonmodifiable." *Id*. at 283-284.

In *Staple v Staple*, 241 Mich App 562, 568-569; 616 NW2d 219 (2000), this Court explained:

Of course, MCL 552.28 creates a statutory right in either party to seek modification of alimony. However, like many other statutory and constitutional rights, parties may waive their rights under MCL 552.28. If the parties to a divorce agree to waive the right to petition for modification of alimony, and agree that the alimony provision is binding and nonmodifiable, and this agreement is contained in the judgment of divorce, their agreement will constitute a binding waiver of rights under MCL 552.28. In brief, we opt to honor the parties' clearly expressed intention to forgo the right to seek modification and to agree to finality and nonmodifiability. [Citations omitted.]

In *Staple*, the Court emphasized that its decision applied only to judgments entered "pursuant to the parties' own negotiated settlement agreements," rather than alimony awards set forth in a judgment of divorce following an adjudication on the merits. *Id.* at 569; see also *Woodington*, 288 Mich App at 356 n 1. Notably, this Court instructed that MCL 552.28 "will always apply to any alimony arrangement adjudicated by the trial court when the parties are unable to reach their own agreement." *Staple*, 241 Mich App at 569. Thus, in *Gates v Gates*, 256 Mich App 420, 433-434; 664 NW2d 231 (2003), this Court held that the trial court's divorce judgment, entered following an adjudication on the merits rather than an agreement of the parties, could not be interpreted in a manner that precluded the defendant from petitioning for a continuation or modification of spousal support at the conclusion of the five-year "rehabilitative period" established by the trial court.

In this case, defendant concedes that the trial court's spousal-support award was not agreed to by the parties, but instead was decided by the trial court after a contested trial, and accordingly, it "is always subject to possible modification." Therefore, we vacate the language in the USSO providing that, after 48 months of spousal support, "Plaintiff shall be forever barred from receiving spousal support from Defendant."

## C. DEFENDANT'S MEDICAL PRACTICE

Plaintiff next argues that the trial court erred by not awarding her a share of defendant's medical practice, which was valued at $184,000. We conclude that plaintiff waived appellate review of this issue.

"A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to harbor error as an appellate parachute." *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 683; 630 NW2d 356 (2001) (cleaned up). Waiver is the intentional relinquishment of a known right. *The Cadle Co v City of Kentwood*, 285 Mich App 240, 254; 776 NW2d 145 (2009). Waiver occurs when a party affirmatively acts in a manner reflecting an intention to relinquish a right, or by failing to act to the extent that it causes one to believe that it was the intention and purpose of the party to waive the right. *Id.* at 254-255. Waiver acts to eliminate the error, and precludes the party from pursuing the issue on appeal. *Id.* at 255.

As explained above, plaintiff did not argue during the trial proceedings that defendant's medical practice itself was an asset to be distributed as part of the marital estate. Rather, plaintiff explored the value of the medical practice only for its relevance in determining an appropriate award of spousal support. Considering this record, we conclude that plaintiff has waived appellate

review of any claim that the trial court erred by failing to award her a share of defendant's medical practice.

## D. THE TAX DEBT

Plaintiff next argues that the trial court erred by apportioning the parties' tax debt equally between the parties, particularly considering the significant differences in their incomes.

Preliminarily, defendant argues that plaintiff should be precluded from challenging the trial court's apportionment of the parties' tax liability, either because she has unclean hands, because any error was invited, or because the IRS's determination that she was not an innocent spouse collaterally estops her from arguing that she should not be equally liable for the tax debt. We reject each of these arguments.

First, defendant argues that because the trial court found that plaintiff's excessive spending contributed to the significant tax debt, the doctrine of unclean hands precludes her from arguing that she should not be held responsible for half that debt. This Court has described the unclean-hands doctrine as follows:

> It is well settled that one who seeks equitable relief must do so with clean hands. The unclean-hands doctrine is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the opposing party, and is only relevant to equitable actions or defenses. [*Varela v Spanski*, 329 Mich App 58, 83; 941 NW2d 60 (2019) (cleaned up).]

As indicated earlier, factors such as each party's conduct and contributions to the marital estate, including debt, and the amounts of those contributions, are just some of many relevant factors that a trial court must consider when apportioning a marital estate. *Sparks*, 440 Mich at 159-160. Accordingly, although the trial court could consider the extent to which plaintiff's conduct contributed to the tax liability in apportioning that liability between the parties, the trial court was still required to consider the remaining *Sparks* factors as relevant to arrive at a fair and equitable distribution. Thus, the trial court's finding that plaintiff's conduct contributed to the tax liability does not foreclose plaintiff from arguing that the trial court's apportionment of the tax debt was not fair and equitable in light of other relevant factors in this case.

Second, defendant argues that, to the extent that the trial court erred by holding plaintiff 50% responsible for the tax liability, plaintiff invited this error by stating in a pleading that "it is appropriate for this court to determine each party equally liable for the IRS debt and any Offer in Compromise with the IRS will be shared equally between the parties." There is no merit to this claim. A party will invite error if the party's own affirmative conduct is the direct cause of the error. *Cassidy*, 318 Mich App at 476. When a party acts to invite error, the right to seek appellate review is waived, and any alleged error is extinguished. *Id*. The statement on which defendant relies was made in plaintiff's response to defendant's motion seeking relief from the trial court's May 2019 opinion that decided the tax liability issue. Defendant argued that the portion of the trial court's opinion and order stating that "[a]ny reduction in the IRS debt that is negotiated shall be applied equally to both parties' debt" should be stricken, and instead language should be

inserted that after the first 12 months of spousal support, each party would be responsible for their own half of the federal tax liability and each party was to negotiate separately with the IRS to seek any reduction in that tax liability. Viewed in the context of defendant's motion, plaintiff's statement was not an acknowledgment that it was proper to hold her 50% liable for the tax debt, but rather simply urged the trial court to reject defendant's suggestion that he be permitted to negotiate separately with the IRS to obtain a reduction in his assigned 50% portion of the tax debt. Thus, defendant's claim that plaintiff *conceded* that it was appropriate to hold her 50% responsible for the tax debt, and thereby invited the error that she now challenges, is not supported by the record.

Third, defendant argues that, given the IRS's determination that plaintiff was not an innocent spouse, and thus was jointly liable for the tax debt, plaintiff is collaterally estopped from now challenging the trial court's ruling to equally apportion the outstanding tax debt. For a party to successfully invoke the doctrine of collateral estoppel, the following elements must be satisfied:

> (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. [*Monet v State Farm Ins Co*, 469 Mich 679, 682-683; 677 NW2d 843 (2004) (cleaned up).]

Defendant, as the proponent of collateral estoppel, carries the responsibility of establishing that the doctrine applies. *Detroit v Qualls*, 434 Mich 340, 357-358; 454 NW2d 374 (1990).

Initially, defendant has not persuasively established that the IRS determination is one that may be given preclusive effect.

> The doctrine of collateral estoppel must be applied so as to strike a balance between the need to eliminate repetitious and needless litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their claims. The extent to which the doctrine is applied is also dependent upon the nature of the forum in which the initial determination was rendered. We have previously determined that when the rendering forum is an administrative agency, the general principles of collateral estoppel are to be applied only when the procedures are adjudicatory in nature, when a method of appeal is provided, and when it is clear that the Legislature intended to make the determination final in the absence of an appeal. [*Storey v Meijer, Inc*, 431 Mich 368, 372-373; 429 NW2d 169 (1988).]

While defendant is correct that a party can potentially invoke collateral estoppel with respect to the decisions of an administrative agency, defendant does not satisfactorily explain whether the United States Department of Treasury, Appeals Office, was acting in *a judicial capacity*, or whether the procedures in the United States Department of Treasury were *adjudicatory in nature*. Although we have not found Michigan caselaw addressing this issue, the issue was addressed in *Dobson v Dobson*, 159 SW3d 335 (Ky App, 2004), in which the court held that an innocent-spouse determination by the IRS did not preclude a state court from assigning a portion of the parties' tax debt to the innocent spouse when dividing the marital estate. The court stated:

The IRS's determination for innocent spouse relief is not entitled to preemption or res judicata because it involves only an administrative process rather than an adjudication, and the only rights adjudged go to which party the IRS pursues for payment. Thus . . . a determination by the IRS or Federal Tax Court is not dispositive in a division of marital debt that includes tax liability. [*Id.*, 159 SW3d at 337 (citation omitted).]

See also *Rose v Rose*, 382 Mont 88, 93; 364 P3d 1244 (2016) (holding that claim and issue preclusion did not apply to a district court's determination of tax liability for a marital debt because the IRS's innocent-spouse determination was not subjected to judicial review).

Furthermore, defendant has not demonstrated that the IRS's determination that plaintiff was not an innocent spouse for purposes of establishing her joint liability for the unpaid taxes is a question of fact essential to the trial court's apportionment of the tax debt when dividing the marital estate in a divorce. In *Rose*, 382 Mont at 93-94, the court explained:

An innocent spouse determination involves considerations different from a [trial] court's division of a marital estate. Under an innocent spouse determination, the IRS's only concern is the identity of the spouse to whom it will look for payment of the delinquent taxes . . . . In other words, the IRS is concerned only with which party will be responsible for payment to the government of the delinquent taxes.

In contrast, a [trial] court's concern in a dissolution proceeding is the equitable apportionment of the marital estate. . . . In equitably apportioning the marital estate, the court generally must determine the marital estate's net worth. This determination necessarily requires the court to consider marital debt. . . . We have defined "marital debt" as all debt incurred by either party during the marriage. . . .

\* \* \*

Accordingly, we conclude that so long as the delinquent tax debt was incurred during the marriage, an innocent spouse determination by the IRS or the Department does not preclude a [trial] court from equitably apportioning the delinquent tax debt to an innocent spouse . . . [Cleaned up.]

Similarly, in Michigan, a trial court is required to equitably distribute the marital estate and the trial court's apportionment of marital debt does not depend on which party incurred the debt. Rather, in determining an equitable distribution of the marital estate, a trial court has discretion to order that one party be required to pay the parties' joint debts. *Lesko*, 184 Mich App at 401. Therefore, while the IRS determination that plaintiff is not an innocent spouse supports the trial court's determination that the tax debt is marital debt, it does not preclude the trial court from equitably apportioning that debt as part of its division of the marital estate. Accordingly, plaintiff is not collaterally estopped from challenging the trial court's apportionment of the tax liability.

We now turn to plaintiff's argument that the trial court's apportionment of the tax debt was inequitable on the facts of this case. In apportioning the tax debt equally between the parties, the

trial court focused exclusively on what it characterized as plaintiff's inability to control her spending, as well as her propensity for high-end purchases, together with defendant's excessive spending habits, and thus determined that both parties should be equally liable for the outstanding tax debt. Although these were proper considerations, absent from the trial court's ruling on this issue is any analysis of other relevant *Sparks* factors in formulating an equitable division of the marital estate. Specifically, the trial court did not address the fact that plaintiff was 48 years old and had left the work force in 2010, primarily to focus on developing defendant's medical practice, which had become financially successful. Additionally, aside from comments to defense counsel in the context of addressing spousal support that plaintiff is "a woman that has lived off the income of her husband" over the duration of a 13-year marriage, cursory references to plaintiff having "no job" and no place to live when considering the potential sale of the Colorado home, and commentary regarding plaintiff's penchant for expensive purses, the trial court did not mention plaintiff's current life status, her necessities, or her personal circumstances.

Moreover, the trial court's decision to divide the rather significant tax debt equally between the parties did not address the parties' substantial income disparity or plaintiff's limited earning capacity compared to defendant's earning capacity. In considering an award of spousal support, the trial court found that defendant had an income of $1 million a year from his medical practice, which plaintiff helped establish. Conversely, plaintiff was not employed and, although the trial court had "no doubt" that she was able to work, it imputed an income to her of only $30,000. The trial court's ruling regarding apportionment of the tax debt did not contain sufficient explanation for this Court to determine on appeal whether imposing half the tax debt on plaintiff was fair and equitable.

Accordingly, we vacate the portion of the judgment holding plaintiff responsible for 50% of the remaining tax debt after spousal support is discontinued after four years, and we remand this case to the trial court for reconsideration of the apportionment of the outstanding tax debt.

### E. JUDICIAL BIAS

Finally, plaintiff argues that, on remand, this case should be reassigned to another judge because the trial judge was biased against her. To preserve an allegation of judicial bias, a party must raise the issue before the trial court. *Illes v Jones Transfer C*o, 213 Mich App 44, 56 n 2; 539 NW2d 382 (1995). See also MCR 2.003(B) and (D). Plaintiff did not file a motion for disqualification or otherwise raise this issue in the trial court. In civil cases, Michigan generally follows the "raise or waive" rule of appellate review. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Although this Court has inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice, generally a failure to timely raise an issue waives review of that issue on appeal. *Id*. See also *Meagher v Wayne State Univ*, 222 Mich App 700, 726; 565 NW2d 401 (1997) (holding that the plaintiff had failed to preserve claims of judicial bias by failing to object in the trial court, and plaintiff had not demonstrated any unusual circumstances warranting consideration of her claims). Having reviewed plaintiff's assertions of bias, we conclude that they lack merit and need not be addressed further.

## III. CONCLUSION

We vacate in part the judgment of divorce to the extent that it requires plaintiff to pay 50% of the outstanding tax liability after the final spousal-support payment, and we remand this case to the trial court for reconsideration of the tax-apportionment issue. Further, we vacate the portion of the USSO that provides that spousal support is forever barred after 48 months. We affirm the divorce judgment in all other respects. Finally, we deny plaintiff's request that this case be reassigned to a different judge on remand.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, neither party may tax costs under MCR 7.219(F).

/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle