MICHAEL L. CARTER, APPELLEE, V. ANNIE B. CARTER, APPELLANT.

626 N.W.2d 576

Filed June 1, 2001.    No. S-00-121.

Michael T. Levy for appellant.

No appearance for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This is an appeal from a decree of dissolution in a domestic relations case. Annie B. Carter appeals from the decree entered on January 4, 2000, because the trial court found that a debt owed to the Internal Revenue Service (IRS) of approximately $58,000 was a marital debt and ordered each party to pay one-half of this debt. We affirm as modified.

## BACKGROUND

Appellee, Michael L. Carter, and Annie were married on September 18, 1977. The couple were separated at various periods throughout their marriage. At the end of 1993, Michael received an employment severance payout from Union Pacific Railroad. Michael's total salary for 1993, including his severance payout, was $208,712.70. Neither Michael nor Annie filed a 1993 income tax return until 1998, when each filed a separate return. Michael designated his filing status as "Married filing separate return." Annie did not sign Michael's 1993 tax return. Exhibit 13, Michael's 1993 federal income tax return, shows a total income of $208,712.70 with $39,313.01 withheld for federal income taxes. Michael testified that $58,000 was due as tax liability for the 1993 severance payout. This $58,000 consists of the original tax liability of approximately $21,000 plus penalties and interest.

The record reveals that Michael deposited $92,990.14 into his own personal bank account on January 31, 1994. Annie did not have access to this account, and the statements on this account

were sent to Michael at his parents' home. Michael testified that in 1994 and 1995, $15,000 that he invested in a business was lost and $30,000 was lost "on a concert." Michael stated that the rest of the money was used by the parties for living expenses for 2 years.

Annie stated that she was never aware of Michael's business investments until after the fact. Annie testified that no severance money was ever deposited into the parties' joint bank account and that Michael never gave any money directly to the household. Annie stated that during 1994 and 1995, Michael paid only about $500 a month for bills. Annie testified that the household bills were paid from the joint account and that Michael never deposited any money into this account in 1993. Annie testified that she believes that the rest of the severance money was gambled away by Michael or used to pay gambling debts. Annie stated that Michael had a gambling problem and had received counseling for this problem.

Michael claims that he was separated from Annie from January to August 1993 and again from November 1994 to December 1995. However, Annie testified that Michael lived with her for probably the whole year of 1993 and the whole year of 1994. Annie stated that the parties separated in December 1994. Michael filed for dissolution of marriage on October 6, 1998. The marriage was dissolved on January 4, 2000.

Michael has not filed a brief in this case but stated on direct examination at trial that he wanted the trial court to divide the $58,000 tax liability in half. The trial court ruled that each party was responsible to pay one-half of the $58,000 debt to the IRS. On appeal, Annie argues that the initial tax principal of approximately $21,000 should be considered as nonmarital debt because it was spent solely by Michael for nonmarital purposes. Annie also argues that the approximately $37,000 in interest and penalties should also be considered as nonmarital debt because that amount was incurred by reason of Michael's dilatory income tax filing for which he was solely responsible.

## ASSIGNMENTS OF ERROR
Annie assigns as error (1) that the trial court erred and abused its discretion in finding that the $58,000 debt to the IRS was a

marital debt and in ordering each party to pay one-half of that debt and (2) that the result of the allocation by the trial court of one-half of the IRS debt to each party was an untenable property division and an abuse of discretion by the trial court in dividing the marital estate.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000); *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000); *Parde v. Parde*, 258 Neb. 101, 602 N.W.2d 657 (1999).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Meints v. Meints, supra.*

A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

The purpose of property division is to distribute the marital assets equitably between the parties. Neb. Rev. Stat. § 42-365 (Reissue 1998). The ultimate test for determining the appropriateness of the division of property is reasonableness as determined by the facts of each case. *Meints v. Meints, supra*; *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999). The debts of the parties should be considered in making a property division pursuant to a divorce. *Id.*; *Black v. Black*, 221 Neb. 533, 378 N.W.2d 849 (1985).

The issue in this case is whether the $58,000 income tax liability incurred by Michael is a marital debt or an individual debt of Michael. Annie argues that the case of *Meints v. Meints, supra,* controls the outcome of this case and requires a modification of the original decree to find that Michael is entirely liable for the $58,000 income tax burden.

The decree was entered January 4, 2000, and *Meints* was decided in March 2000. The trial court, therefore, did not have the benefit of the *Meints* decision when entering the decree.

*Meints* involved a marital dissolution proceeding. In *Meints*, between 1990 and 1996, the husband, who was self-employed, incurred a federal income tax liability of $19,162.31, plus an additional $11,235.36 in statutory penalties for late filing, for a total IRS liability of $30,397.67. During those years, the husband and the wife filed separate income tax returns. The wife filed timely tax returns. The husband testified that he spent the funds that he failed to withhold for IRS tax purposes on family expenses, and the wife did not dispute this claim.

The wife argued that she paid her taxes on time, unlike her husband, and claimed it would be unfair to require her to pay one-half of the outstanding income tax liability which was the direct result of the husband's failure to timely pay his share of the taxes. The husband claimed that the fact that the parties filed separate income tax returns was irrelevant because the tax liability incurred was a marital debt and the funds that he failed to pay were spent on family expenses.

On appeal, we d etermined that income tax liability incurred during the marriage is one of the accepted costs of producing marital income and, thus, income tax liability should generally be treated as a marital debt. *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000). We further stated that an innocent spouse who has filed separate tax returns, and paid his or her taxes in a timely fashion, should not be forced to share in any statutory penalties for the late filings of a dilatory spouse. *Id.*

The wife in *Meints* did not dispute her husband's assertion that the money he failed to withhold was spent on family expenses. In the instant case, however, Annie argues that the initial tax principal of approximately $21,000 should be considered nonmarital debt because it was spent solely by Michael on nonmarital purposes. In addition, Annie argues the amount of penalties and interest should be nonmarital debt because of Michael's dilatory filing.

The *Meints* decision dictates the penalties assessed and the accrued interest in the present case be nonmarital debt because it was solely attributable to Michael's delay in filing. Therefore,

the trial court abused its discretion in that it determined all of the tax debt, which included penalties and interest, was marital debt.

The next inquiry is whether credible evidence establishes that Michael spent significant funds on nonmarital pursuits. This will determine if the approximately $21,000 of original tax principal is a marital or nonmarital debt. In *Meints*, we noted that "equity may not demand the same result if credible evidence establishes that the delinquent tax-paying spouse spent significant funds on nonmarital pursuits." 258 Neb. at 1024, 608 N.W.2d at 569.

■ Appeals in domestic relations matters are heard de novo on the record, and thus, an appellate court is empowered to enter the order which should have been made as reflected by the record. *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998). Michael testified that out of the $130,000 he received, he deposited $92,000 into the account solely in his name and on which the statements were sent to his parents' home. He also testified that $30,000 was lost on a concert and $15,000 was lost on a failed business. Michael stated the rest of the money was used for the parties' living expenses for 2 years.

However, the record shows that Michael deposited $92,990.14 in his personal bank account on January 31, 1994, and that on September 28, 1994, there was only $643.84 in the bank account. This conflicts with Michael's testimony that the rest of the money was used for the parties' living expenses for 2 years.

Annie's testimony contradicted Michael's testimony. Annie stated that she was never aware of Michael's business investments until after the fact. The $92,000 account in Michael's name only was one which Annie did not have access to. The bank statements for this account were sent to Michael to an address that Annie testified was Michael's parents' address.

Annie testified that no severance money was ever deposited into the parties' joint bank account and that Michael never contributed any money directly to the household. Annie stated that during 1994 and 1995, Michael only paid about $500 a month for bills. Annie testified that the household bills were paid from the joint bank account and that Michael made no deposits in that account during 1993. Annie testified that she believed the rest of the severance money was gambled away by Michael or used to pay gambling debts.

We determine there is credible evidence contained in the record to conclude that Michael spent significant funds on non-marital pursuits. The trial court abused its discretion in ordering Annie to pay one-half of the $58,000, which required her to pay one-half of the original tax principal.

## CONCLUSION

We hold under the facts of this case that equity demands the tax principal be treated as nonmarital debt because credible evidence established that it was spent by Michael on nonmarital pursuits. Michael shall be solely liable for the original tax principal of approximately $21,000 from his severance package. We also determine that Michael is also solely liable for all assessed penalties and accrued interest due to Michael's dilatory filing, as it is also nonmarital debt.

AFFIRMED AS MODIFIED.