Roberta Holland DOBSON, Appellant,

v.

Jerry Lynn DOBSON, Appellee.

No. 2003–CA–000609–MR.

Court of Appeals of Kentucky.

July 23, 2004.

Discretionary Review Denied
by Supreme Court April 13, 2005.

Case Ordered Published by
Supreme Court April 13, 2005.

Susan M. Meschler, Meschler & Cunningham, Taylorsville, KY, for appellant.

James L. Theiss, Williamson, Simpson & Theiss, LaGrange, KY, for appellee.

Before COMBS, Chief Judge; DYCHE,

Judge; and EMBERTON, Senior Judge.[1]

## OPINION

DYCHE, Judge.

The matter before this Court involves several issues in the area of family law, one of which is an issue of first impression. We affirm.

In this matter, we review an opinion from Oldham Circuit Court which ordered appellant, Roberta Holland Dobson, to pay forty percent of a tax debt for the business of her husband, (appellee, Jerry Lynn Dobson), although the Internal Revenue Service had awarded her innocent spouse relief under 26 U.S.C. § 6015, the Innocent Spouse Statute, which grants relief from joint and several liability. Once innocent spouse relief is granted, the IRS will no longer look to that spouse for restitution of underpaid taxes plus interest and penalties that may arise. Roberta argues on appeal that the circuit court erred in assigning any of the debt to her.

The history of the debt owed for taxes revolves around Jerry's role as a shareholder in Cardinal Chemical Company, a Sub Chapter S corporation, which he owned with his brother. Jerry's corporate tax returns were audited from 1991 through 1999. After reviewing the audits, the IRS disallowed numerous deductions that were claimed on the corporate tax returns, such as meals, travel expenses, automobile expenses, advertising, etc. Roberta was unaware of the audits, and it is undisputed that her name was forged on the Power of Attorney allowing Jerry's accountant to handle the audits. Between the back taxes owed, penalties and interest, the circuit court found the total tax liability to be $190,748.82.

Originally, the circuit court assigned fifty percent of the tax liability to each party holding as follows:

As a result of audits, certain deductions including entertainment, auto use and advertising costs were disallowed. As a result of these audits, substantial debts were incurred by the parties to the Internal Revenue Service and the Kentucky Revenue Cabinet. The Court notes that the respondent was granted an innocent spouse status by the Internal Revenue Service. The respondent also testified that she located IRS audits hidden in the basement by the petitioner. The Court further finds that both parties have enjoyed the benefits which resulted from the underpayment of taxes during the calendar years in question. The amount of back taxes which have been paid to date equals $155,406.48. The parties are still liable for an additional sum of $80,972.00 to the Internal Revenue Service/Kentucky Revenue Cabinet. The Court has reviewed *Neidlinger v. Neidlinger*, [Ky.,] 52 S.W.3d 513 (2001). In *Neidlinger*, supra, the Court held that there was no presumption that debts were to be divided equally or in the same proportion as marital property. With respect to the taxes which had previously been paid totaling $155,406.48, the Court assigns each party 50% of this liability. With respect to the taxes owing to the Internal Revenue Service/Kentucky Revenue Cabinet totaling $80,972.00, the Court assigns 80% of this liability to the petitioner and 20% of this liability to the respondent.

After this order was rendered, Roberta filed a motion asking the trial court to reconsider making her fifty percent responsible for the tax debt. Upon reconsideration, the circuit court reevaluated the

1. Senior Judge Thomas D. Emberton, sitting as Special Judge by Assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

case and assigned Roberta only forty percent of the tax debt. She timely appealed this ruling.

Roberta testified at the circuit court level that she had no knowledge of the disallowed deductions on the corporate return and had no knowledge that an audit had occurred until she found copies of the reports in the basement. Her testimony was also that she had no involvement in the running of the corporation or the filing of the tax returns.

■ Roberta relies on her status as an innocent spouse pursuant to the IRS ruling for relief in this matter. The parties have not cited to this Court any Kentucky case law regarding the issue concerning an innocent spouse determination in a dissolution matter. We have not found any Kentucky case law either. However, there is persuasive guidance from other jurisdictions.

■ The IRS's determination for innocent spouse relief is not entitled to preemption or res judicata because it involves only an administrative process rather than an adjudication, and the only rights adjudged go to which party the IRS pursues for payment. *Ravetti v. U.S.*, 37 F.3d 1393, 1396 (9th Cir.1994). Thus, Roberta concedes that a determination by the IRS or Federal Tax Court is not dispositive in a division of marital debt that includes tax liability.

The fact that the deductions were initially taken created a lower tax burden and allowed Roberta and Jerry to keep more money in their own pocket. Roberta is simply being required to pay taxes that she would have been responsible for had Jerry not taken the deductions which were later disallowed. *See generally, Killough v. Killough*, 72 Ark.App. 62, 65, 32 S.W.3d 57, 59 (2000).

Roberta did not present evidence that the money the family had as a result of the underpayment of taxes was not spent on family expenses. Some courts have held that if the funds owed to the IRS are spent on nonmarital pursuits, the debt will be nonmarital. *Carter v. Carter*, 261 Neb. 881, 626 N.W.2d 576 (2001). However, in this matter, no evidence was presented at all of how the money was spent. There being no evidence that Jerry used the funds for non-marital pursuits, we maintain confidence in the trial court and cannot say that it abused its discretion. *Weldon v. Weldon*, Ky.App., 957 S.W.2d 283, 286 (1997); *see also Clark v. Clark*, Ky. App., 782 S.W.2d 56, 60 (1990); *Platt v. Platt*, Ky.App., 728 S.W.2d 542 (1987); *Moss v. Moss*, Ky.App., 639 S.W.2d 370 (1982).

Further, this is not a case wherein Jerry simply failed to file taxes on time. Some courts have held that, in a case wherein one spouse failed to file taxes on time, only the initial debt owed to the IRS was marital and the resulting penalties and interest were nonmarital due to the late filings of a dilatory spouse. *See Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000). However, such is not the case in the matter at hand.

■ Roberta also argues dissipation of marital assets with regard to the taxes owed. However, the time period and taxes in question occurred while the parties still lived together as husband and wife. And Roberta failed to present any evidence that Jerry used the funds for any nonmarital pursuits. "[A] court may find dissipation when marital property is expended (1) during a period when there is a separation or dissolution impending; and (2) where there is a clear showing of intent to deprive one's spouse of her proportionate share of the marital property." *Brosick v. Brosick*, Ky.App., 974 S.W.2d 498, 500

(1998) (citing *Robinette v. Robinette,* Ky. App., 736 S.W.2d 351, 354 (1987)). Neither of these preconditions having been met in this matter; Roberta's discussion regarding dissipation of marital funds is irrelevant.

Roberta also concedes that "the Courts uniformly state that income tax liability incurred during the marriage is one of the accepted costs of producing marital income, and therefore is generally held to be treated as marital." However, she also argues that this result might be different where credible evidence establishes that the delinquent tax paying spouse may be guilty of wrongdoing such as fraud, forgery or using significant funds for nonmarital pursuits. *See Meints,* 608 N.W.2d at 564; *Franz v. Franz,* 729 So.2d 724, 725 (La.App. 1 Cir.1999).

Here, Roberta argues for relief because the tax liability resulted from deductions which were later disallowed for Cardinal Chemical. She maintains that she had no control over the company or any knowledge of the entertainment, automobile use, and advertising deductions being taken on behalf of the company. Thus, she contends that Jerry's fraud and forgery have dissipated the marital estate. We disagree.

It was only Roberta's signature on the power of attorney to allow the accountant for Cardinal Chemical to handle the audit that was forged. There are no allegations that it was forged on the tax returns. Roberta does not contend that the accountant incorrectly handled the audits, and she presented no evidence otherwise of fraud which the circuit court found credible. Based on these facts, we can find no abuse of discretion.

The judgment of the Oldham Circuit Court is affirmed.

EMBERTON, Senior Judge, Concurs.

COMBS, Chief Judge, Dissents and Files Separate Opinion.

COMBS, Chief Judge, Dissenting.

I dissent. Both forgery and fraud deprived Roberta of any opportunity to have the knowledge necessary to question her husband's behavior. Even the IRS recognizes that the wrongful behavior of one spouse should not be imputed to an innocent spouse. 26 U.S.C. 6015. Where the lesser infraction of failure to file returns on time has been involved, the IRS has absolved the innocent spouse of liability for penalties and interest. *Meints, supra.*

The violations at issue here are far more serious and pervasive than a late filing. These parties are not in *pari delicto.* To impose such a financial burden on Roberta is clearly punitive in effect where she has been determined to be innocent of wrongdoing.

The initial issue is not a showing of how the revenue was spent (*i.e.,* for marital *versus* nonmarital purposes). What is central to this case is a determination of wrongdoing with an allocation of the financial burden to the spouse who perpetrated the fraud. Equity and due process clearly dictate that Roberta should not pay a pro-rata share of the delinquent taxes and penalties where Jerry is 100% guilty of the fraudulent conduct.

Consequently, I would reverse the order of the trial court.