IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SCHNACKEL V. SCHNACKEL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LAURA B. SCHNACKEL, APPELLEE AND CROSS-APPELLANT,

V.

GREGORY R. SCHNACKEL, APPELLANT AND CROSS-APPELLEE.

Filed October 1, 2024.    No. A-23-454.

Appeal from the District Court for Douglas County: TODD O. ENGLEMAN, Judge. Affirmed in part, remanded with directions in part, and in part reversed.

Michael W. Milone, Karisa D. Johnson, Mark J. Milone, and Wendy A. Wussow, of Koukol, Johnson, Schmit & Milone, L.L.C., for appellant.

Jeffrey A. Wagner and Layf J. Carlson, of Wagner Meehan, L.L.P., for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Gregory R. Schnackel appeals, and Laura B. Schnackel cross-appeals, from an order of the district court for Douglas County, finding Gregory in contempt for his failure to pay monthly equalization payments to Laura, which were required pursuant to a decree of dissolution entered by the court in March 2018. The district court's order also found that although Laura was required to pay half of certain marital debts pursuant to the decree, that she was not yet in contempt for failing to pay such amounts. The district court sentenced Gregory to 60 days in jail on his contempt judgment, which could be purged by Gregory paying to Laura $10,000 per month for six consecutive months. Upon our review, we affirm the district court's order finding that Laura was not in contempt. We remand the matter to the district court to modify Gregory's contempt sentence

and purge plan. We reverse the district court's decision denying Laura any attorney fees for her successful prosecution of her contempt action.

## II. BACKGROUND

Gregory and Laura were married in 1985. They had two children together and amassed considerable property, including a nationwide engineering firm owned solely by Greg, Schnackel Engineers, Inc.; multiple real properties; artwork; jewelry; and classic cars.

The parties' marriage was dissolved by a decree of dissolution entered in March 2018. In the decree, the district court valued and divided the marital estate and concluded that based on this division, a total equalization payment of $1,664,741 was owed to Laura. The district court ordered Gregory to make monthly payments to Laura toward the total equalization amount of $8,670.52 for 192 months. The court also ordered Gregory to pay child support and alimony.

Both Gregory and Laura appealed from the March 2018 decree of dissolution. In our November 2019 opinion, we determined, among other issues, that the district court abused its discretion in finding that the appreciation on funds inherited by Laura during the marriage was marital property. See *Schnackel v. Schnackel*, 27 Neb. App. 789, 937 N.W.2d 234 (2019). As a result of this finding, we modified the decree by increasing the equalization payment owed to Laura to $1,923,328.20. *Id*. Due to this modification, we found that Gregory owed Laura monthly payments of $10,017.33 for 192 months. *Id*. We affirmed the decree in all other respects. *Id*.

On August 3, 2021, Laura filed a verified complaint for an order to show cause, asking the court to find Gregory in contempt for his failure to comply with the terms of the decree of dissolution. Laura's allegations in the verified complaint included an assertion that Gregory had intentionally and willfully failed to make any of the monthly payments toward the total equalization amount owed to her. According to Laura's calculations, by August 2021, Gregory owed $430,561.54 in arrearages. In Gregory's response to Laura's verified complaint, he alleged that he lacked the ability to pay the monthly equalization payments. He further alleged that because Laura owed him money pursuant to the terms of the decree of dissolution, he should not be found in contempt for failing to pay her.

On August 25, 2021, Gregory filed his own verified application for an order to show cause, asking the district court to find Laura in contempt for her failure to comply with the terms of the decree of dissolution. As is relevant to this appeal, Gregory alleged that Laura had failed to pay "her 50% share of the marital debts outlined in the [] decree," including the parties' tax liabilities accrued during the marriage.

The judge who heard the contempt proceedings was not the judge who had previously presided over the case and entered the decree of dissolution. After a hearing on the parties' contempt actions, the newly assigned judge entered a lengthy order finding Gregory in willful contempt for his failure to make the monthly payments toward the total equalization amount owed to Laura. In so finding, the district court explicitly found that Gregory's claim that he did not have the financial ability to make the monthly payments was "wholly lacking in credibility and clearly not supported by the facts, evidence and testimony at trial." The court then calculated the amount of arrearages owed by Gregory:

> As of the month of trial, November 2022, [Gregory] should have made 56 monthly payments of $10,017.33 towards the equalization payment for a total of $560,970.48.

According to the [] decree, the equalization payment would accrue interest on delinquent payments at the judgment interest rate of 3.61%. At the time of trial there would be $20,251.03 in interest that has accrued on the delinquent equalization payments. The total equalization payments, plus interest, outstanding at trial was $581,221.51.

In the same order, the district court found that Laura was not in contempt for failing to make payments toward any marital liabilities owed by her pursuant to the decree. The court found that while Laura did owe 50 percent of the tax liabilities incurred by the parties during the marriage, that her failure to pay "towards these tax liabilities [was] not willful and contumacious as to find that she is in contempt of the [] decree." The court further determined that an examination of the decree as a whole revealed that Laura was not obligated to pay any portion of several other debts.

A further hearing was held regarding an appropriate sanction for Gregory's contempt of the decree of dissolution. After this hearing, the district court entered an order sentencing Gregory to 60 days in jail beginning on November 1, 2023. However, Gregory could purge himself of this jail sentence by paying Laura $10,000 per month, for six consecutive months, such that a total of $60,000 is paid to Laura. Such $10,000 monthly payments were to be paid in addition to all other financial obligations Gregory was ordered to pay as delineated in the original decree, including his regular monthly equalization payment, alimony payment, and child support payment.

Gregory appeals and Laura cross-appeals from the district court's order. In connection with his appeal, Gregory paid a supersedeas bond of $60,000 to the clerk of the district court.

## III. ASSIGNMENTS OF ERROR

On appeal, Gregory challenges the district court's interpretation of the amended decree of dissolution that Laura was only required to pay one-half of the marital tax debts. He asserts that contrary to the court's interpretation, the amended decree requires her to pay one-half of all the marital debts. Gregory also challenges the district court's decision finding that Laura was not in contempt for failing to pay any of the parties' marital debts; the court's reliance on the unpled affirmative defense of unclean hands, and in its determination of Gregory's sentence for contempt and the accompanying purge plan. Gregory does not contend that the district court erred by finding him in contempt for failing to pay the court-ordered equalization payments.

On cross-appeal, Laura also challenges the court's determination of Gregory's sanction and accompanying purge plan. She then asserts that the district court erred in failing to award her attorney fees for the contempt actions.

## IV. STANDARD OF REVIEW

The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below. *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt

and of the sanction to be imposed are reviewed for abuse of discretion. *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022).

A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

## V. ANALYSIS

### 1. DISTRICT COURT DID NOT ERR IN FINDING LAURA WAS NOT IN CONTEMPT

#### (a) Non-Tax Marital Debts

Before we address the district court's decision that Laura was not in contempt for failing to pay marital debts, we address Gregory's argument regarding what marital debts Laura owed pursuant to the decree of dissolution.

Gregory's central argument in his action to find Laura in contempt of the decree of dissolution was that she had failed to pay any of the marital debts allocated to her pursuant to the terms of the decree. In the proceedings below, there was some confusion about exactly what debts Laura was ordered to pay within the decree. Gregory argued that Laura owed one-half of all marital debts. His argument is based upon language in the decree stating, "Laura and Greg have significant liabilities. (Ex. 274). The Court finds all liabilities to be marital liabilities. Accordingly, the Court orders that all liabilities are to be shared equally (50/50) between Laura and Greg." The district court's citation to exhibit 274 references Gregory's proposed property division, which he offered at the dissolution trial. Such exhibit includes a section titled "Liabilities" wherein Gregory suggests how to allocate the parties' marital debt. Notably, while referenced, this exhibit was not attached to, nor explicitly incorporated into the decree of dissolution. Moreover, the exhibit, itself, does not propose a 50/50 division of each debt listed. Some debts are allocated to Gregory and some to Laura. Others are proposed to be divided equally.

In asserting that she did not owe one-half of all the marital debts pursuant to the decree, Laura cited to different provisions in the decree which explicitly divided certain debts differently than 50/50. For example, Laura was awarded her vehicle, subject to all the debt associated with it and was ordered to hold Gregory harmless from such debt. Laura was also awarded the marital home subject to the significant outstanding mortgage, which she was required to pay in full. In the conclusion section of the decree, the district court ordered "that both Greg and Laura are equally responsible for all tax liabilities during the marriage. Both Greg and Laura are each equally responsible for payment of any and all tax burdens during the marriage." The court did not indicate in the conclusion that Gregory and Laura were each equally responsible for all other marital debts.

In the court's order finding that Laura was not in contempt for failing to pay marital debts, the court found that the decree of dissolution did not require her to pay one-half of all the liabilities listed in trial exhibit 274. The court did find, however, that the decree required Laura to pay one-half of the marital tax debt.

On appeal, Gregory challenges the district court's interpretation of the decree of dissolution. While he agrees that other portions of the decree make Laura solely responsible for the debts associated with the marital home and her vehicle, he asserts: "The [] court erred by improperly

interpreting the language of the [] Decree and finding Laura was not obligated to pay a 50% share of all marital debts identified in the [] Decree." Brief for appellant at 21. Upon our review, we agree with the findings of the district court. The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation. *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021). Effect must be given to every part thereof, including such effect and consequences that follow the necessary legal implication of its terms, although not expressed. *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019). Where the language used in the decree is unambiguous, a court is bound to consider such language from the four corners of the agreement itself, and what the parties thought the agreement meant is irrelevant. See *Klinginsmith v. Wichmann*, 252 Neb. 889, 567 N.W.2d 172 (1997).

Gregory notes that with respect to the mortgage on the marital home and Laura's vehicle, specific provisions of the decree contravene the general 50/50 division of debts found in the general pronouncement found on page 63. We agree with his conclusion regarding the marital home and the vehicle. However, we also agree with the district court that other provisions of the decree addressing other marital debts similarly contravene that same pronouncement. The district court found as follows:

> This Court cannot agree with [Gregory]'s proposition that [Laura] was to pay 50% of all the liabilities as contained on Exhibit 274 from the original Amended Decree. The language of the Decree does incorporate Ex. 274 where the Court on page 63 of the Amended Decree finds "Laura and Greg have significant liabilities. (Ex. 274)." The problem arises in that the Court then makes a single, generalized statement that all liabilities are marital and are to be split 50/50. However, this is the only place that such a "finding" appears in the entire reading of the Amended Decree. Specifically, in the "CONCLUSION" section of the Amended Decree, pages 74-96, there is no further finding that "all liabilities are to be split 50/50". In fact, quite the contrary is found in that the Court goes to exhaustive detail outlining specifically what is and is not awarded to each party and in many cases specifically addresses many of the supposed liabilities as outlined in Exhibit 274 from the original trial (Exhibit 292 from this trial) and specifically deals with many of those liabilities. So to argue, as [Gregory] does, that those liabilities are all to be split 50/50 goes contrary to the specific finds and language in the Amended Decree. . . .

After giving several examples of where specific provisions of the decree divide debts or liabilities in a manner other than 50/50, the district court concluded that only the tax liabilities were subject to equal division. The court stated:

> [Laura] contends that she was ordered to pay 50% of the tax liability only in reference to Exhibit 792 (Ex. 274 from original trial), while [Gregory]'s position [is] that she is to pay 50% of all the liabilities on Exhibit 792 (Ex. 274 from original trial). The Court cannot find [Gregory]'s position to be correct, nor is it supported by the facts or evidence, or from a complete reading of the entire Amended Decree.
>
> Nowhere in the "Conclusion" section is there a specific finding that all liabilities are to be split 50/50. However, on page 88 of the Amended Decree there is a specific finding in

the "Conclusion" section that "both Greg[ory] and Laura are equally responsible for all tax liabilities during the marriage" which is also supported by looking at Exhibit 792 (Ex. 274 incorporated into Amended Decree from original trial) where that exhibit clearly delineates all tax liabilities as being split 50/50 to each party. The Court could not be more clear in the "Conclusion" section wherein it found that "Both Greg[ory] and Laura are each equally 50% responsible for payment of any and all tax burdens during the marriage". To find otherwise would be inequitable to the parties, go against specific awards as contained [in] the Amended Decree and reflected in Exhibit 792 (Ex. 274 from original trial), and would award to [Laura] specific debts/liabilities that the Court never intended to award to [Laura] or to make her responsible for and for many of these liabilities that are separately and independently address[ed] in both the findings and conclusion sections of the Amended Decree in itself.

Other than the various state, local, and federal tax liabilities listed on trial exhibit 274, the two debts Gregory contends should be divided equally are a JP Morgan credit card and a debt to SEI referred to as the SEI ledger account. Interestingly, Gregory's proposed division of those debts in the exhibit were that he would be awarded the entirety of the debt on both the credit cards and to SEI. He even lists the vast majority of the SEI ledger account as a separate debt that should be set off to him. The district court first addressed the JP Morgan credit card:

> As a prime example against [Gregory]'s proposition would be no more clearly found than as to [his] position that the $143,325.00 in JP Morgan credit card #9779 debt at line 76 of Exhibit 792 (Ex. 274 from original trial) is a liability that according to [Gregory]'s position the general language of the Amended Decree on page 63 would require [Laura] to pay 50% of this balance. The trial court specifically referred to JP Morgan credit card #9779 liability on page 40 of the Amended Decree as the "Defendant's secret account".

The district court at this point quoted the dissolution decree at length regarding the specific nature and amount of the monies expended with respect to Gregory's girlfriend. Included in the decree's analysis of this issue was the finding that Gregory made payments of $2,967,716.74 from 2013 until 2017 for charges incurred on this account which in large part were used by him to finance and conceal his lifestyle with his girlfriend. At the time of trial, a balance of $143,325 still remained due and owing on this "secret account."

The district court then went on to note that the trial judge concluded that Gregory had dissipated a total of $3,500,000 in marital assets for nonmarital purposes. This amount was included as an asset to the marital estate, with Laura being entitled to half of its value.

The district court then concluded as follows:

> These specific findings clearly show that the Trial Court included this specific liability in its ultimate allocation of assets/debts for equalization purposes. For [Gregory] to now argue that the trial court intended for [Laura] to be responsible for 50% of this specific credit card liability that [Gregory] dissipated on his extra-marital affair would be wholly contrary to common sense and is not in line with the actual findings made by the trial court in the findings section and again in the conclusion section of the Amended Decree. This specific liability, the JP Morgan Acct. #9779, was addressed and accounted for in the

Amended Decree in both the finding and conclusion sections and to go back now and argue that [Laura] should pay 50% of this specific debt would result in a windfall for [Gregory] and double penalty to [Laura] and certainly could not have been the intention of the trial court. Nor could it have been the intention of the Trial Court to make the aggrieved spouse be responsible for 50% of a liability incurred by [Gregory] on his affair.

Our independent review of the decree leads us to the same conclusion as made by the district court. Gregory incurred this debt as part of his affair and was the sole person in the marriage to benefit from the expenditures he made. To require Laura to pay for half of the benefits represented by this debt is inconsistent with the findings made by the trial court in the decree. We cannot find that the trial court intended this debt to be divided on a 50/50 basis.

Next, the district court turned its attention to the SEI ledger account. The court found:

Looking even further into what [Gregory] is asking this Court to do is to find that [Laura] is responsible for 50% of $759,920.00 in SEI ledger account 24505 debt at line 77. First, it should not go without mentioning that [Gregory]'s own trial exhibit 274 (Ex. 792 in this matter) specifically lists that $729,003.66 of this liability is separate debt and not listed as a marital liability. Exhibit 274 (Ex. 792 in this matter) clearly finds that only $30,916.34 is marital and it assigns this debt specifically to [Gregory], again this document was prepared by [Gregory]. The Trial Court did address this specific liability in the body of the Amended Decree in its valuation of SEI and AEA[1] also owned wherein on page 56 of the Amended Decree the Trial Court specifically found the following:

Ledger Account No. 24505 (Ex. 245) — Balance due as of February 1, 2018 -- $759,920. An examination of this reflects SEI payments/loans to Greg[ory] for attorney fees, transfers to his checking account for payment of rent, payment of bills, and payment of credit card expenses. These SEI funds loaned to Greg[ory] appear to come from the Marvel loans totaling $865,500 (Ex. 247), and the $605,000 loans by Greg[ory] from the Milone Escrow Account (Ex. 233, 246).

With these liabilities in mind (specifically the Ledger Acct. #24505), the Trial Court valued SEI and AEA on page 57 at $3,267,900. The Trial Court further found in the conclusion section of the Amended Decree at pages 80-81 the following:

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Court finds that SEI and AEA have a combined value of $3,267,900 as of June 30, 2017. The Court finds that in 1994 Dale Schnackel gifted Greg's initial 50% share of the Partnership which gift has a present value of $171,071.20. The $171,071.20 gift amount will be subtracted from the combined SEI and AEA valuation of $3,267,900 ($3,267,900-$171,071.20) = for a total valuation of $3,096,828.80.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that SEI and AEA's valuation of $3,096,828.80 constitutes marital property. From the total

---

[1] AEA Integration Inc. was formed in 2003. Gregory is the sole shareholder. AEA provides computer support and develops software for SEI.

valuation amount, the Court awards $1,000,000.00 to Laura's share of the marital division. The remaining $2,096,828.80 is attributed to Greg's marital division.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Greg will maintain 100% ownership of SEI.

It is clear from a reading of the entire Amended Decree that the liabilities found on lines 76 and 77 of Ex. 792 (Ex. 274 in the original trial) were specifically addressed and dealt with in both the findings section and the conclusion sections of the Amended Decree of Dissolution. Therefore, those liabilities could not possible [sic] be the 50% responsibility of [Laura] in this matter as those liabilities were specifically addressed in the Amended Decree and included by the Trial Court in its findings and conclusions. To say that [Laura] is now 50% responsible for those debts would provide [Gregory] double the benefit for those liabilities as they have already been accounted for in the Amended Decree and such a finding would doubly penalize [Laura] by making her responsible for liabilities that have already been accounted for in the Amended Decree, and such a finding is not supported by the specific findings of the Trial Court.

Our independent review of the decree also leads us to agree with the district court's conclusions regarding the SEI Ledger account. The decree must be read in its entirety and effect given to every part thereof. In so doing, we cannot read the provision found on page 63 so broadly as to require that, notwithstanding the court's specific findings regarding the separate nature of the vast majority of the account and the award of SEI and AEA to Gregory, Laura nonetheless is responsible for half of the debt thereon. As such we find no error in the district court's interpretation of the decree and find no error in the court's finding that Laura was not in contempt of the orders found in the decree by failing to pay her part of the non-tax marital debt.

(b) Tax Debts

While Laura cannot be held in contempt for failing to pay debts not assigned to her in the decree, she admitted that she had paid nothing toward the various tax liabilities the parties had incurred. She further acknowledged that the decree did obligate her to pay 50 percent of these liabilities. Trial exhibit 274 listed tax liabilities owed to the federal government as well as to the states of Nebraska and New York. The record indicates that some of these liabilities had been paid either by Gregory or from money placed in escrow after the sale of marital assets. However, a significant sum was still outstanding, particularly to the federal government. We note that while the amounts of taxes due in some years appears to have been determined, disputes are ongoing as to other years. The evidence is thus incomplete as to the total amount of taxes due. The focal point of Gregory's evidence was on Laura's failure to pay toward the parties' 2017 tax liability to the federal government.

Laura's primary defense to the allegation that she was justified in not paying her portion of the taxes due lies in the determination made by the IRS that she was an "innocent spouse." It was undisputed that Laura had applied for and received notification from the IRS that with respect to tax year 2017 she was found to be an innocent spouse and "allowed full relief" from any responsibility to pay any of the amounts owed. Laura interpreted this notification (exhibit 819) to

mean that any obligation she had to pay a portion of the taxes pursuant to the decree of dissolution was obviated.

The district court disagreed with her interpretation. The court stated:

[Laura] is simply mistaken in her assumption that a finding of "innocent spouse" relieves her from her obligation under the Amended Decree. An innocent spouse determination by the IRS as an administrative matter does not relieve the innocent spouse from his or her obligation to pay tax liability imposed on that party by a state's divorce decree. See, e.g.: *Estate of Ravetti v. United States*, 37 F.3d 1393, 1395-36 (9th Cir. 1994); *In re Marriage of Hargrave*, 43 Cal. Rptr. 2d 474, 478 (Ct. App. 1995); *Dobson v. Dobson*, 159 S.W.3d 335, 337 (Ky. Ct. App. 2004); *In re Marriage of Steadman*, 821 P.2d 59, 61-62 (Wash. Ct. App. 1991); *In re Marriage of Jahimiak*, No. 99-0922, 2000 WL 280300, at *5 (Wis. Ct. App. Mar. 16, 2000); *PM v. MW*, Nos. 1095-83, 06-28642, 2007 WL 1518621 (Del. Fam. Ct. Feb. 23, 2007)[;] *Kozak v. Kozak*, No. 198799, 1998 WL 1990458 (Mich. Ct. App. Aug. 4, 1998); *Bryant v. Flint*, 894 S.W.2d 397 (Tex. App. 1994); see also *In re Marriage of Marshall*, 23 Cal. App. 5th 477, 232 Cal. Rptr. 3d 819 (2018); *Rose v. Rose*, 382 Mont. 88, 364 P.3d 1244 (2016). The IRS's determination of innocent spouse status is merely an administrative decision that it will not collect tax debt from a specific debtor; it has no effect on a State court's decision to divide tax debt and make one or more parties liable for that debt as a matter of State law in a divorce. See *id*.

While the district court rejected Laura's contention that her innocent spouse status relieved her of her obligation to pay 50 percent of the tax liability, the court did find that her reliance on the IRS determination was sufficient to rebut Gregory's claim that her disobedience to the provisions in the decree were willful and contumacious. The court found:

Based on the evidence and testimony [Laura's] actions in not paying the tax liability was an honest and sincere misunderstanding of how the "innocent spouse" status applied in State Court as to the Amended Decree. [Laura's] actions in not paying on those liabilities, while mistaken and in error, were not willful and contumacious in the sense of a finding of contempt. [Laura's] actions, to rise to the level of contempt, must have been committed intentionally, with knowledge that the act violated the court order and the Court cannot make such a finding given the "innocent spouse" finding and [Laura's] honest belief that this finding relieved her of her obligation to make the tax liability payments. Albeit this belief turned out to be incorrect, the Court believes that this failure to pay was an honest misunderstanding of the finding of "innocent spouse" and that her failure to pay on these liabilities did not rise to the level of willful or contumacious so as to find her in contempt.

We find no error with the district court's determination that Laura was not in contempt of the provisions of the decree requiring her to pay 50 percent of the tax liabilities. Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021). Willful disobedience is an essential element of civil contempt, and in this context, "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Braun v. Braun*, 306 Neb. 890, 947 N.W.2d 694

(2020). Willfulness is a factual determination to be reviewed for clear error. *Id*. Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence and without any presumptions. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

Upon our review of the record, we find that Gregory simply failed to prove by clear and convincing evidence that Laura's failure to pay the marital tax liabilities amounted to an intentional, knowledgeable decision to disregard the terms of the decree. Despite Gregory's general contention that Laura had failed to pay a multitude of tax liabilities allocated to her in the decree of dissolution, at the contempt hearing, Gregory's testimony and evidence focused on the parties' 2017 back taxes.

At trial, the parties agreed that they owed additional federal income tax for the year 2017. Gregory testified that in March 2022, four years after the entry of the decree of dissolution, he and the IRS agreed that $819,809 was owed in additional 2017 income tax. Gregory and the IRS agreed that Gregory would pay an initial payment of $150,000 toward the back taxes and would then pay a monthly payment of $9,912 until the taxes were paid off. Laura was not a party to this agreement and, in fact, had been deemed by the IRS to not owe these taxes. Gregory has, apparently, been paying the monthly payments since March 2022. However, Gregory offered no evidence to demonstrate that prior to the contempt hearing, he ever informed Laura of the payment plan; ever told her about the monthly payments; and ever instructed her on how to pay. As such, it is questionable as to whether Laura's failure to pay could be considered willful and contumacious given the lack of information provided by Gregory regarding the debt.

Even if we set aside the lack of information provided by Gregory, however, we would still agree that it was not unreasonable for Laura to believe that the innocent spouse determination made by the IRS relieved her of her obligation to pay. While her conclusion may have been in error, there is simply no evidence in the record that would indicate that Laura knew that the IRS determination would not be enforceable in the district court. At trial, Laura conceded that she now realized that the IRS determination was not binding on the district court. We also note that Laura has not appealed the district court's determination that she remained responsible for her share of the tax liabilities.

Nonetheless, Gregory did not prove that her failure to pay was made willfully and with knowledge that the IRS determination would have no effect on her obligation under the decree of dissolution. We find no clear error in the district court's determination.

## 2. DISTRICT COURT'S RELIANCE ON AFFIRMATIVE DEFENSE OF UNCLEAN HANDS

As we have explained above, in the district court's order, it found that Laura was not in contempt for her failure to pay one-half of the marital debts. The court first found that the decree of dissolution did not require Laura to pay one-half of all the liabilities delineated in trial exhibit 274, as Gregory asserted. As such, she was not in contempt for failing to pay debts not allocated to her. The district court then found that by the terms of the decree, Laura was obligated to pay one-half of the marital tax debts. However, the court found that Laura was not yet in contempt for her failure to pay these debts, because her nonpayment was not willful. Later in the decree, the district court also found that Gregory's contempt claims were barred by his unclean hands:

> As outlined above, [Laura]'s actions in not making payments as ordered are found to be justifiable given the findings in this order. While these findings do not alleviate her of

- 10 -

her ultimate obligation to pay, her actions as alleged by [Gregory] do not rise to the level of willful and contumacious. However, as to [Gregory], who has by his own testimony admitted that he did not make any payments and he clearly had the ability to make such payments and that he made the conscious decision to not make the equalization payments shows he act[ed] with unclean hands.

. . . .

[Gregory], by his own testimony, has not done equity here. Notwithstanding anything else said here, [Gregory]'s contempt claims are barred given his inequitable conduct and unclean hands.

In his brief on appeal, Gregory asserts that the district court erred in relying on the unclean hands doctrine in denying his contempt action against Laura. He asserts that the court should not have considered the doctrine, because Laura never raised it in her pleadings. Given our analysis above affirming the district court's finding that Laura was not in contempt of the decree of dissolution, we need not discuss Gregory's argument that the court erred in finding that the doctrine of unclean hands was an alternative rationale for denying the contempt action.

In our analysis above, we found that Gregory had simply failed to meet his burden of proof in demonstrating that Laura had willfully failed to pay any liabilities allocated to her under the decree. Based upon this finding, we need not consider whether the doctrine of unclean hands would also provide a basis for finding that Laura was not in contempt. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *Recio v. Evers*, 278 Neb. 405, 771 N.W.2d 121 (2009).

### 3. DISTRICT COURT ERRED IN DETERMINING SENTENCE AND PURGE PLAN FOR GREGORY'S CONTEMPT

Both Gregory and Laura assert error in the district court's decision regarding Gregory's sentence for contempt and the accompanying purge plan for that sentence. Upon our review, we find merit to both parties' assertions and remand with directions for the district court to modify the sentence and purge plan accordingly.

In her cross-appeal, Laura argues that the district court abused its discretion in setting up a purge plan which required Gregory to pay only $60,000 of the past due equalization payments over a six month period, when the total amount owed to her pursuant to the contempt order was $581,221.51. She asserts,

By all accounts, the findings and orders of the court would mitigate toward a purge plan that would ultimately satisfy the entire arrearage owed by Greg[ory] while he paid his current obligation. However, the court imposes a purge plan [that] merely requires Greg[ory] to pay a mere 10% of his arrears to purge himself of contempt.

Brief for cross-appellant at 28. We find Laura's assertion to have merit.

In the purge plan, the district court explicitly found that Gregory "had, and currently has, the specific ability to pay the amounts due or comply with this Court's [] Decree of Dissolution entered on March 30, 2018, and amended by the Order on Mandate entered on August 6, 2020." Given this finding of Gregory's present ability to pay the equalization payment due to Laura, we

- 11 -

find the order requiring Gregory to pay only $60,000 of the $581,221.51 owed to purge himself of contempt to be an abuse of discretion. See *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016) (explaining that when purge order involves payment of money, sum required to purge oneself of contempt must be within contemnor's present ability to pay, taking into consideration assets and financial condition of contemnor and his or her ability to raise money).

The district court's purge plan does not provide any recourse to Laura for obtaining the remaining $521,221.51 in arrearages owed to her after Gregory has purged himself of contempt by paying only $60,000. We do recognize that in entering the order, the district court may have been attempting to take into account the money that Laura owed to Gregory for her portion of the marital tax debt that could be offset from Gregory's total arrearage. However, the court found that because the parties could not agree on the exact amount owed to Gregory by Laura and that Gregory had failed to prove that amount with sufficient clarity, that no offset could be considered in determining the purge plan. Given the court's finding, Gregory's contempt and the resulting purge plan should have remained a separate issue from Laura's tax liability. Of course, Gregory is not precluded from seeking a further hearing to present specific evidence regarding the amount Laura owes in taxes which can be offset from his arrearage.

Upon our review, we conclude that the purge plan entered by the district court should be modified to require Gregory to pay $10,000 per month toward the entirety of the arrearage owed on the equalization payment until such arrearage, including accrued interest is paid in full. We note from our record that Gregory submitted a $60,000 cash deposit to the clerk of the district court as required by the district court in its "Order for Supersedeas Bond of Cash Deposit." In its modified purge plan, the district court shall order that this deposit be transferred to Laura and credited against the arrearage Gregory owes in equalization payments. The district court shall require that Gregory make payments on the remaining arrearage beginning with the first day of the first month following the receipt of the mandate and on the first day of each month thereafter until the entirety of the arrearage, including accrued interest, is paid.

In his appeal, Gregory also challenges certain aspects of the district court's purge plan. Having found that these challenges have merit, we further modify the plan established by the district court.

Gregory first asserts that the purge plan is punitive in nature because while the district court created a means for him to stay out of jail by making monthly payments, the court did not provide a means for him to get out of jail if he failed to make the monthly payments. A civil sanction is coercive and remedial; the contemnors "carry the keys of their [jail cells] in their own pockets," because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance. *Hicks v. Feiock*, 485 U.S. 624, 633, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988). The Nebraska Supreme Court has specifically held that when a contemnor is required to serve a determinate sentence after a specified date if compliance has not occurred by that date, and there is no provision for discharge thereafter by doing what the contemnor had previously refused to do, then the sentence is punitive as of that date. *Sickler v. Sickler, supra*. In circumstances where there is no provision for purging the contempt after a certain date, the contemnor no longer holds the keys to his or her jail cell as of that date. *Id*. The order ceases to be coercive, because the jail sentence is no longer subject to mitigation. In the case of civil contempt involving the use of

incarceration as a coercive measure, a court may impose a determinate sentence only if it includes a purge clause that continues so long as the contemnor is imprisoned. *Id.*

Here, the court failed to include the ability to purge in the event Gregory failed to make the monthly payments and was sent to jail for 60 days. We, thus, further modify the purge plan to provide that if Gregory fails to make a monthly payment toward his equalization payment arrearage, he will be jailed for a period of 60 days, but will be released upon payment of the entirety of the arrearage then due and owing. To be clear, in the event Gregory is placed in jail due to failure to make a monthly payment toward his arrearage, he shall only be released and deemed to be purged from contempt by paying the total amount of money (principal and interest) owed at that time. Payment of a portion of the total amount due shall not purge him from contempt.

Gregory also appeals the district court's failure to include explicit language in the purge plan which appropriates the monthly payments to his arrearages, making "the purge plan akin to a . . . punitive, criminal fine." Brief for appellant at 41. We agree that the district court's purge plan does not explicitly relate the monthly payments to paying down the arrearages owed, but we also find that the district court clearly intended that the monthly payments ordered be applied to reduce Gregory's arrearages. As such, we amend the purge plan to provide that the $10,000 monthly payments paid by Gregory are to be applied to the arrearages he owes to Laura.

We remand this matter to the district court for modification of Gregory's sentence and purge plan in accordance with our findings above.

### 4. DISTRICT COURT ERRED IN FAILING TO AWARD ATTORNEY FEES TO LAURA

In her cross-appeal, Laura also contends that the district court erred in failing to award her any attorney fees even though she was the successful party in the contempt actions. Gregory, on the other hand, asserts that there was no abuse of discretion in the court's failure to award Laura attorney fees because the large monthly payments he is already paying to Laura render him unable to pay her attorney fees. Upon our review, we find merit to Laura's contention that she should be awarded attorney fees.

At the contempt hearing, Laura offered into evidence affidavits from the two attorneys who had previously represented her during the contempt proceedings. Laura's first attorney prepared and filed the initial contempt pleading in August 2021, prior to his representation ending. His affidavit reflects that Laura incurred $3,777.50 in attorney fees during his tenure. Laura's second attorney represented her during part of the period leading up to trial. We note that Laura's complaint was filed approximately 14 months prior to the main portion of the trial. Significant discovery and other pretrial proceedings took place during the interim period. Her affidavit reflects that Laura incurred $12,085.86 in attorney fees during this representation. A third attorney represented Laura at trial and for the sentencing phase. On appeal, Laura only seeks an award of the fees charged by her first two attorneys. Some of these fees were incurred in prosecuting Laura's contempt action against Gregory and some of the fees were incurred in defending Laura against Gregory's contempt action. However, given that the two actions were conflated, we are not able to glean the exact breakdown of fees between the two actions.

In the district court's order finding Gregory in contempt and Laura not in contempt, the court did not explicitly deny Laura's request for attorney fees. However, the court did state at the end of the order that "All other relief requested by the parties in the pleadings outlined in this order

and motions they have filed since August 1, 2021, that is not specifically granted above is hereby denied." We read this statement as an implicit denial of Laura's request for attorney fees. Upon our review, we find such denial to be an abuse of the district court's discretion.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. Specific to contempt proceedings in domestic relations actions, Neb. Rev. Stat. § 42-370 (Reissue 2016) provides that "[c]osts, including a reasonable attorney's fee, may be taxed against a party found to be in contempt." Attorney fees in contempt cases fall under a court's inherent power to do all things necessary to enforce its judgment. *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022). Section 42-370 is silent as to the availability of awarding attorney fees for successfully defending a contempt action. See *Hawks v. Hawks*, 32 Neb. App. 70, 993 N.W.2d 688 (2023).

Here, Laura was successful in her contempt action against Gregory, in that Gregory was found in contempt of the decree of dissolution for his willful failure to pay Laura monthly payments toward the total equalization amount owed to her. We find that the court abused its discretion in failing to award her any attorney fees as a result of Gregory being found in contempt of court. Laura requested a total of $15,863.36 in attorney fees in the contempt proceedings. While we recognize that only a portion of those fees was incurred in her successful prosecution of her contempt action, we also recognize that the evidence presented at the contempt hearing demonstrated that Gregory's failure to pay Laura any monthly payments toward the equalization award was willful and contumacious. Such evidence indicates that during the time that Gregory was to be making the monthly payments to Laura, he was spending his money on jewelry for his new wife, expensive wine, and multiple living spaces, while claiming that he did not have the funds to pay Laura. As such, it is reasonable to require Gregory to pay for some of Laura's attorney fees spent enforcing the district court's clear directive in the decree of dissolution.

Accordingly, we order Gregory to pay to Laura $7,932 in attorney fees. We note that in awarding such fees to Laura we have awarded only that portion of fees which approximates what was incurred in Laura's prosecution of her contempt action and not that portion which was incurred in defending Gregory's contempt action. See *Hawks v. Hawks, supra* (holding that in contempt actions in domestic relations cases, trial court is authorized to award attorney fees only against party found to be in contempt).

## VI. CONCLUSION

We affirm the decision of the district court finding Laura to not be in contempt of the decree for her failure to pay any marital debts or tax liabilities. However, we remand the matter of Gregory's sentence and purge plan to the district court for modification of the purge plan consistent with the language of this opinion. We reverse the court's decision to not award Laura any attorney fees.

AFFIRMED IN PART, REMANDED WITH DIRECTIONS IN PART, AND IN PART REVERSED.